[No. B028881. Second Dist., Div. Three. Sept. 22, 1988.]

FRANCHISE TAX BOARD, Plaintiff and Respondent, v. CONSTRUCTION LABORERS VACATION TRUST FOR SOUTHERN CALIFORNIA et al., Defendants and Appellants.

**956**

COUNSEL

Cox, Castle & Nicholson and James P. Watson, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Raymond B. Jue, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ARABIAN, J.—**

### INTRODUCTION

The sole issue of this appeal is whether the Employee Retirement Income Security Act of 1974, 29 United States Code section 1001 et seq. (ERISA) permits state tax authorities to collect unpaid state income taxes by levying on funds held in trust for taxpayers under an ERISA-covered vacation benefit plan. Respondent Franchise Tax Board of the State of California (the Board) has attempted to levy upon the accounts of several delinquent state income taxpayers held in trust by the Construction Laborers Vacation Trust for Southern California (CLVT or the Trust). The plan that CLVT administers is an "employee welfare benefit plan" within the meaning of ERISA (29 U.S.C. § 1002(1)). After protracted, related litigation between the Board and CLVT, which included appeals to the Ninth Circuit Court of Appeals and the United States Supreme Court, the Superior Court of Los Angeles County granted the Board's motion for summary judgment, holding that the Board's authority to levy upon funds held by CLVT was not preempted by ERISA. In accordance with ERISA preemption principles, recently articulated by the United States Supreme Court in *Mackey* v. *Lanier Collections Agency & Service, Inc.* (1988) 486 U.S. 825 [100 L.Ed.2d 836, 108 S.Ct. 2182], we affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

1. *The Trust*

CLVT is an employee benefit trust, established through collective bargaining between the Southern California District Counsel of Laborers and various employers' associations. A board of trustees, consisting of eight members designated by the union and eight by the employers, administers CLVT pursuant to the terms of a trust agreement. That trust agreement provides for annual payment of vacation benefits to each covered employee. Employers bound to the collective bargaining agreements with the union are obligated to make contributions to CLVT for each hour of work performed by covered laborers.

The trust is a "spendthrift" trust, designed to insure that the individual laborer does not dissipate the vacation fund until he or she is eligible for each year's lump sum payment.[1]

### 2. The Board's Authority to Levy

When delinquent taxes are owed to the State of California, the Board is authorized to issue a notice to withhold under California Revenue and Taxation Code section 18817, which provides: "The Franchise Tax Board may by notice, served personally or by first class mail, require any employer, person, officer or department of the state, political subdivision or agency of the state . . . having in their possession, or under their control, any credits or other personal property or other things of value, belonging to a taxpayer . . . to withhold, from such credits or other personal property or other things of value, the amount of any tax, interest, or penalties due from the taxpayer . . . and to transmit the amount withheld to the Franchise Tax Board at such times as it may designate."[2]

An account holder who fails to honor a notice to withhold issued by the Board is liable for payment of the amount due. (Rev. & Tax. Code, § 18818.)

---

[1] Article 9.08 of the trust agreement provides: "It is the intent and purpose of the Plan and of this Agreement and a material part of the consideration for the making of contributions to the Fund by individual employers, that the money in each vacation account shall be received by the employee entitled thereto personally. Accordingly, no payments due the fund and no moneys in the vacation accounts established pursuant to the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any employee or any other persons and any such anticipation, pledge, encumbrance or charge shall be void and ineffective. The money credited to a vacation account shall be subject to withdrawal and distribution only at the times, and in the manner and for the purposes specified in this Agreement."

Similarly, Section 4.06 of the trust agreement provides: "Each employee or beneficiary under the Plan is hereby restrained from selling, transferring, anticipating, assigning, hypothecating, or otherwise disposing of his benefits hereunder, or any other right or interest under the Plan, and the Board of Trustees shall not recognize, or be required to recognize, any such sale, transfer, anticipation, assignment, hypothecation or other disposition. Any such benefit, right or interest shall not be subject in any manner to voluntary transfer or transfer by operation of law or otherwise, and shall be exempt from the claims of creditors or other claimants and from all orders, decrees, garnishments, executions or other legal or equitable process of proceedings to the fullest extent permissible by law."

[2] It has been held that this procedure does not violate procedural or substantive due process in authorizing the Board to collect taxes without notice or hearing where there is an acknowleged tax debt, declared to be due by the taxpayer herself. (*Greene* v. *State Franchise Tax Bd.* (1972) 27 Cal.App.3d 38 [103 Cal.Rptr. 483].) CLVT presented evidence that sometimes beneficiaries of vacation trusts assert that they do not owe the taxes which are the subjects of the notices to withhold, but do not allege that this is so in regard to the three accounts at issue in this case.

## 3. *The Action*

In June 1980 the Board filed a complaint against the Trust for failure to honor garnishment and for declaratory relief.[3] The complaint alleged that at several times in 1977 and 1978 the Board had issued "notices to withhold" to the Trust pursuant to California Revenue and Taxation Code section 18817 to levy upon funds held by the Trust for the payment of unpaid taxes, penalties and interest imposed upon three identified beneficiaries of the Trust. The Trust acknowledged receipt of each notice and informed the Board that it had requested an opinion letter from the Administrator for Pension and Welfare Benefit Programs of the United States Department of Labor as to whether it was permitted under ERISA to honor the levy. In 1980, CLVT notified the Board that it would not honor the levies of the Board, based upon the advisory opinion of the United States Department of Labor which stated the Department's position as follows: "[T]he process of any state judicial or administrative agency seeking to levy for unpaid taxes . . . upon benefits due a participant or beneficiary under the [CLVT] Plan is pre-empted under ERISA section 514."

The Board sought damages in a sum in the amounts owing on the three specified accounts, "not to exceed $380.56 plus interest from June 1, 1980," and a declaration that CLVT was obligated to honor all future levies by the Board.

CLVT removed the suit to the United States District Court, Central District of California,[4] where the federal district court denied the Board's motion for remand to the state court. On the parties' cross-motions for summary judgment, the district court concluded that sections 18817 and 18818 of the California Revenue and Taxation Code were not preempted by ERISA, and that the anti-alienation provision of ERISA was not applicable to employee welfare benefit plans.

CLVT appealed the judgment in favor of the Board to the Ninth Circuit where a majority of the panel found that the summary judgment should be reversed. (*Franchise Tax Bd., Etc.* v. *Const. Laborers, Etc.* (9th Cir. 1982) 679 F.2d 1307 [77 L.Ed.2d 420, 429, 103 S.Ct. 2841].) The Board appealed the decision to the United States Supreme Court. The Supreme Court held that the case was not within the removal jurisdiction conferred by title 28, United States Code section 1441, and therefore did not reach the merits of

---

[3] This action is referred to herein as CLVT I to distinguish it from a related action in federal court, referred to as CLVT II.

[4] Franchise Tax Board, Etc. v. Construction Laborers Vacation Trust for Southern California et al. (U.S. Dist. Ct., C.D.Cal., No. 80-02741-R).

the preemption question. (*Franchise Tax Bd.* v. *Laborers Vacation Trust* (1983) 463 U.S. 1, 7 [77 L.Ed.2d 420, 429, 103 S.Ct. 2841].)

After the original lawsuit was remanded to state court, CLVT filed a new declaratory relief action in federal district court (CLVT II). (Edward Ashton et al. v. Kenneth Cory et al. (U.S. Dist. Ct., C.D. Cal., No. 83-5414).) This time the district court granted CLVT's motion for summary judgment, declaring that California's Revenue and Taxation Code section 18817 was preempted by section 514 of ERISA (29 U.S.C. § 1144(a)). On appeal by the Board, the Ninth Circuit reversed the judgment, finding that CLVT's action was barred by the Tax Injunction Act, 28 United States Code, section 1341, which prohibits the federal district courts from enjoining, suspending or restraining "the assessment, levy or collection of any tax under State law *where a plain, speedy and efficient remedy may be had in the courts of such State.*" (*Ashton* v. *Cory* (9th Cir. 1986) 780 F.2d 816, 818, italics in original.)

Finally, on March 26, 1987, the Board filed its motion for summary judgment in CLVT I, the action before us. In support of the Board's motion, John D. Dykeman, program specialist in the enforcement bureau of the Board, declared that, according to the Trust agreement, contributions to the fund for the payment of paid vacations are a part of the wages due to the employees covered by the collective bargaining agreement between the Southern California Council of Laborers and various employer associations and are subject to withholding tax and social security and unemployment taxes. He explained that CLVT's refusal to honor the Board's levies upon the money accruals in favor of the three named taxpayers had damaged the Board up to a total maximum aggregate amount of $642.39 plus accruing interest.

Mr. Dykeman also declared, "The Board's use of the order to withhold to enforce collection of unpaid tax liabilities is particularly crucial in situations involving vacation trust funds, such as CLVT. The Board acknowledges that it does rely, to a great extent, upon wage garnishments to collect delinquent personal income tax. However, wage garnishments are a less effective means of collection from a portion of the tax debtors in some occupations associated with vacation trust funds. [¶]It would appear that many vacation trust funds are established for the benefit of individuals in occupations where frequent changes of employers is common. This same circumstance, frequent changes of employers, makes it more difficult for the Board to identify a tax debtor's current employer. The Board's largest source of current employment information is the Employment Development Department. Generally, this information is at least three months old

when received by the Board. Consequently, many wage garnishments issued by the Board reach prior rather than *current* employers. [¶] . . . [T]he Board has identified approximately 130 vacation trust funds established in California by various unions or associations with a combined membership estimated to be in excess of 400,000 individuals."

Mr. Dykeman explained that the Board attempts to cooperate with the trustees of the vacation trust funds, and has arranged to issue levies for a number of trust funds only at times close to the dates funds are to be disbursed to members. Most vacation trust funds do not comply with the orders to withhold because of the issues involved in this litigation. Some disburse funds to members, while others hold funds subject to orders to withhold pending a final decision in this case. Mr. Dykeman estimated that vacation trust funds in California currently hold $3 million under levies issued by the Board to collect delinquent taxes.

In response to the Board's motion for summary judgment, CLVT opposed the Board's motion and filed its own motion for summary judgment. CLVT submitted the declaration of Charles Clark, principal executive in charge of the Ironworker Employee Benefit Corporation (IEBC), a non-profit corporation organized to administer several employee benefit trust funds to reimburse ironworkers employed in unionized construction in California, Arizona and Nevada. Mr. Clark declared IEBC had received more than one thousand requests from the Board to withhold more than $800,000 in funds it is holding on behalf of ironworkers in the California Field Ironworkers Vacation Trust Fund, one of the funds administered by IEBC. In a number of instances, ironworkers have informed IEBC that they contest the delinquencies assessed and that they will take legal action against the trust fund if the trust disburses monies to the state. According to Clark's declaration, the administrative cost of dealing with these levies is "a significant burden" upon the trust fund. The fund provides for disbursement to covered ironworkers quarterly, and the trust is often " 'caught in the middle' " between the ironworker and the Board. The trust has been sued by ironworkers for withholding funds to satisfy tax levies at least three times, resulting in considerable legal expense to the trust.

Mr. Clarke declared, "Permitting creditors of ironworker employees to levy upon the assets of the [IEBC] Trust completely frustrates the purpose of the Trust. The [IEBC] Trust is a 'spendthrift' Trust, designed to disburse funds to covered employees only at specified times. If creditors, including the State of California, can levy upon the assets of the [IEBC] Trust at any time they wish, the funds in the plan will simply become a source of collateral for creditors of ironworkers. If creditors can reach the assets of the

[IEBC] Trust to satisfy claims for car payments, rental payments, delinquent taxes, and other expenses, the Fund will be little more than a clearing house for employee debts."

The superior court granted the Board's motion for summary judgment and denied CLVT's motion, holding that Revenue and Taxation Code section 18817 was not preempted by the provisions of ERISA. Judgment was entered against CLVT in the sum of $642.39 plus interest and declared CLVT was obligated to honor future levies by the Board.

CLVT now appeals that judgment.

## ISSUE

Does ERISA preempt the state's authority to levy against a delinquent taxpayer's account in an employee vacation trust fund?

## DISCUSSION

1. *Standard of Review*

■ Because the relevant facts are not in dispute, the propriety of the grant of summary judgment in this case is a matter of law, specifically the question of preemption. (Code Civ. Proc., § 437c; *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134]; *Stalnaker* v. *Boeing Co.* (1986) 186 Cal.App.3d 1291, 1297 [231 Cal.Rptr. 323].)

2. *General Preemption Principles*

■ CLVT contends that ERISA preempts the right of the state to seize assets held in trust by CLVT in contravention of the provisions of the Trust agreement.

" 'In deciding whether a federal law pre-empts a state statute, our task is to ascertain Congress' intent in enacting the federal statute at issue. "Preemption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' *Jones* v. *Rath Packing Co.* 430 US 519, 525, [51 L.Ed. 2d 604, 97 S.Ct. 1305] (1977)." *Fidelity Federal Savings & Loan Assn.* v. *De La Cuesta,* 458 US 141, 152-153 [73 L.Ed.2d 664, 102 S.Ct. 3014] (1982).' *Shaw* v. *Delta Air Lines, Inc.,* 463 U.S. 85 at 95 [77 L.Ed.2d 490, 103 S.Ct. 2890]." (*Metropolitan Life Ins. Co.* v. *Massachusetts* (1985) 471 U.S. 724, 738 [85 L.Ed.2d 728, 739, 105 S.Ct. 2380].) However,

" 'the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " (*Ray* v. *Atlantic Richfield Co.* (1978) 435 U.S. 151, 157 [55 L.Ed.2d 179, 188, 98 S.Ct. 988], quoting *Rice* v. *Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 223 [91 L.Ed. 1447, 1455, 67 S.Ct. 1146], and *Jones* v. *Rath Packing Co.* (1977) 430 U.S. 519 [51 L.Ed.2d 604, 97 S.Ct. 1305].)

3. *The General Structure, Purposes and Preemption Provisions of ERISA*

It is undisputed that vacation trusts like CLVT are "employee welfare benefit plans" or "welfare plan" within the meaning of ERISA. ERISA distinguishes between such plans and "pension plans."[5]

ERISA "is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. See *Nachman Corp.* v. *Pension Benefit Guaranty Corp.,* 446 US 359, 361-362 [64 L.Ed.2d 354, 100 S.Ct. 1723] (1980); *Alessi* v. *Raybestos-Manhattan, Inc.,* 451 US 504, 510 [68 L.Ed.2d 402, 101 S.Ct. 1895] (1981). The term 'employee benefit plan' is defined as including both pension plans and welfare plans. The statute imposes participation, funding, and vesting requirements on pension plans. §§ 201-306, 29 U.S.C. §§ 1051-1086 []. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans. §§ 101-111, 401-414, 29 U. S. C. §§ 1021-1031, 1101-1114 []." (*Shaw* v. *Delta Air Lines, Inc., supra,* 463 U.S. 85, 90-91 [77 L.Ed.2d 490, 497], fn. omitted.).

Both welfare and pension plans are subject to federal standards for fiduciary conduct in the management of the plan and its assets. (29 U.S.C. §§ 1104-1113.) Specifically, the fiduciary of every plan "shall discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of

---

[5] Section 3(1) (29 U.S.C. § 1002(1)) provides, in pertinent part: "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or *vacation benefits,* apprenticeship or other training programs . . . ." (Italics added.)

29 U.S.C. Section 1002(3) further provides: "The term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee benefit plan and an employee pension benefit plan."

administering the plan; . . . (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter. . . ." (29 U.S.C. § 1104(a)(1)(A) and (D).)

In addressing the question of preemption, we initially note that this is not a situation in which state laws are preempted because of a direct conflict with ERISA. (See, e.g., *Alessi* v. *Raybestos-Manhattan, Inc.* (1981) 451 U.S. 504 [68 L.Ed.2d 402, 101 S.Ct. 1895] [state law forbidding offsets in pension benefits for workers' compensation awards conflicted with ERISA which permitted such offsets.]) The anti-assignment or alienation provision of ERISA, section 206(d)(1) (29 U.S.C. § 1056(d)(1)) applies only to *pension plans*. It provides that "[each] pension plan shall provide that benefits provided under the plan may not be assigned or alienated."[6]

Since there is no express provision regulating anti-alienation clauses in welfare plans such as CLVT, it is necessary to determine the scope of the general preemption provision of ERISA, section 514 (29 U.S.C. § 1144). Subsection (a) provides that, with certain exceptions which are set forth in subsection (b), "the provisions of this title and Title IV [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. Subsection (b) expressly excepts from the preemption clause, laws that "regulat[e] insurance, banking, or securities" (29 U.S.C. § 1144(b)(2)(A) and (B)) and "any generally applicable criminal law of a State" (29 U.S.C. § 1144(b)(4)). Section 514(d), 29 United States Code section 1144(d), provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law."

California Revenue and Tax Code sections 18817 and 18818 are "State law" as defined by section 514 (29 U.S.C. § 1144).

---

[6] In *Franchise Tax Bd. etc.* v. *Const. Laborers, Etc.* (9th Cir. 1982) 679 F.2d 1307, vacated (1983) 463 U.S. 1, the Ninth Circuit concluded that "under the teaching of the *Alessi* case," the state tax-levying law was preempted, reasoning that extension of the anti-alienation provision to creditor's claims on vacation funds was "consistent with the statute . . . if not demanded by it." (*Id.*, at p. 1309.)

In *Misic* v. *Building Service Employees Health* (9th Cir. 1986) 789 F.2d 1374, 1376-1377, the Ninth Circuit held that the anti-assignment provision of ERISA, which applies to pension plans, did not invalidate the assignment of benefits by a beneficiary of his right to reimbursement under a health care plan (a welfare plan) to the health care provider, observing that "[h]ealth and welfare benefit trust funds are designed to finance health care. Assignment of trust monies to health care providers results in precisely the benefit the trust is designed to provide and the statute is designed to protect." (*Id.*, at p. 1377.)

Subdivision (c) of section 514 (29 U.S.C. § 1144(c)) provides as follows: "(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

"(2) The term 'State' includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter."

4. *No Preemption of State Garnishment Statutes*

Fortunately, the difficult issue presented by this appeal has been resolved by the United States Supreme Court. Very recently, in a five-to-four decision, *Mackey* v. *Lanier Collection Agency & Service, Inc., supra,* 486 U.S. 825, [100 L.Ed.2d 836], the Supreme Court addressed the issue which it had reserved in CLVT I (*Franchise Tax Bd.* v. *Laborers Vacation Trust, supra,* 463 U.S. 1, 7, 26, fn. 30 [77 L.Ed.2d 420, 429, 441]), characterizing it as "a close one." (*Mackey, supra,* 486 U.S. at pp. 830-831 [100 L.Ed.2d at p. 844].)

The Georgia statute at issue in *Mackey* expressly exempted ERISA plan benefits from garnishment. Plaintiff collection agency obtained money judgments against participants in an ERISA welfare benefit plan. A Georgia trial court granted the collection agency's request to garnish the debtor participants' plan benefits. The Georgia Court of Appeals reversed, holding that the Georgia statute exempted such benefits. However, the Georgia Supreme Court reversed, holding that the state provision exempting ERISA plan benefits was itself preempted by ERISA, and therefore the plan was subject to garnishment under the general Georgia garnishment statute. The United States Supreme Court affirmed.

The court held that section 514(a) (29 U.S.C. § 1144(a)) preempts the Georgia statute which "expressly refers to—indeed, solely applies to—ERISA employee benefit plans" because state laws which make reference to ERISA plans are laws that "relate to" those plans within the meaning of that section. (*Mackey, supra,* 486 U.S. at p. 829 [100 L.Ed.2d at p. 843].)

The court then addressed the "more complex question" of whether the entire Georgia garnishment procedure is preempted by ERISA. The court rejected the argument that, because the general statute requires plan trustees to respond to garnishment orders with funds otherwise due

beneficiary-debtors, and to incur substantial administrative burdens and costs, the statute "relates to" the plan within the meaning of section 514(a).

The court observed, "Unfortunately, ERISA itself offers no express answer as to whether welfare benefit plan trustees must comply with garnishment orders like those respondent is seeking to enforce. In our view, however, certain ERISA provisions, and several aspects of the statute's structure, indicate that Congress did not intend to forbid the use of state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits." (*Mackey, supra,* 486 U.S. at pp. 831-832 [100 L.Ed.2d at p. 845].) The court reasoned that, although ERISA provides that a plan may "sue or be sued" as an entity for specified relief and clearly contemplates the enforcement of money judgments against a plan, and although lawsuits against ERISA plans for run-of-the-mill state-law contract or tort claims are relatively commonplace, ERISA did not provide an enforcement mechanism for collecting judgments. "Consequently, state-law methods for collecting money judgments must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way to enforce such a judgment won against an ERISA plan." (*Id.,* at p. 834 [100 L.Ed.2d at 846].)

The court also reasoned that ERISA's ban on alienation or assignment, section 206(d)(1), is limited to pension benefits, which indicates that Congress did not intend to preclude garnishment of welfare plan benefits. If section 514 was intended to preclude garnishment of all ERISA plan benefits, section 206(d)(1) would be redundant.

CLVT attempts to distinguish the California tax garnishment statute from the statute at issue in the *Mackey* case by emphasizing that the Board is authorized to compel payment whether or not there is a judgment against the taxpayer. We note that there is nothing in the *Mackey* opinion which would require a different preemption standard on that basis. The opinion discusses state-law garnishment and attachment methods generally. There is no issue regarding the propriety of the state methods of collecting outstanding tax liabilities. Indeed, the Supreme Court expressly noted that in its own review of this case, CLVT I, it reserved the very issue raised by the *Mackey* case. (*Mackey, supra,* 486 U.S. at p. 829 [100 L.Ed.2d at p. 844].)

CLVT also argues that this case is distinguishable from *Mackey* because there is no indication in *Mackey* that there was an anti-alienation provision in the plan itself, while that is an express term of the CLVT plan. Whether a plan contains an anti-alienation provision or not is only relevant if ERISA preempts state garnishment laws in regard to welfare benefit plans as well as

pension plans, allowing welfare benefit plans to contain such provision if they desire.[7] This is not the holding in *Mackey*. The court held that ERISA does not preclude state-law attachment of ERISA welfare plan benefits, without qualification. To hold that anti-alienation provisions in a welfare benefit plan immunizes the plan from attachment and garnishment of welfare benefits would be in effect to find preemption.

DISPOSITION

Judgment affirmed.

Danielson, Acting P. J., and Croskey, J., concurred.

---

[7] By this argument, CLVT is in reality suggesting a different preemption analysis: that Congress intended that welfare benefit plans be permitted to contain anti-alienation provisions (like those required of pension plans), and thus ERISA preempts state law to that extent.