946 F.2d 1476
 60 USLW 2325, 14 Employee Benefits Cas. 1617
 Fred DAVIDOWITZ, D.D.S., Morris Davidowitz, D.D.S., Donald
Dobbs, D.D.S., Waltraut Grau, D.D.S., and Jeffrey
P. Alexander, D.D.S., Plaintiffs-Appellees,
v.
DELTA DENTAL PLAN OF CALIFORNIA, INC., Defendant-Appellant.
 No. 90-16841.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 18, 1991.
Decided Oct. 28, 1991.
 
 1
 M. Laurence Popofsky, Judith Z. Gold, Heller, Ehrman, White & McAuliffe, and Peter F. Sloss, San Francisco, Cal., for defendant-appellant.
 
 
 2
 Arthur Fine and Douglas W. Bordewieck, Mitchell, Silberberg & Knupp, Los Angeles, Cal., for plaintiffs-appellees.
 
 
 3
 Thomas W. Brunner, Wiley, Rein & Fielding, Washington, D.C., for Nat. Health Care Anti-Fraud Ass'n, as amicus.
 
 
 4
 Richard C. Johnson, Saltzman & Johnson, San Francisco, Cal., for Northern California Area Retail Clerks Unions, as amicus.
 
 
 5
 Appeal from the United States District Court for the Northern District of California.
 
 
 6
 Before GOODWIN and SNEED, Circuit Judges, and TAYLOR*, District Judge.
 
 TAYLOR, District Judge:
 
 7
 This case presents the issue, on apparent first impression, whether ERISA affirmatively mandates assignability of welfare benefit plan payments notwithstanding an express plan term prohibiting assignment. ERISA expressly provides pension plan benefits are non-assignable, but is silent on welfare plan benefits. While Ninth Circuit authority holds ERISA's silence does not bar assignments, this Court concludes ERISA's silence cannot be interpreted to affirmatively mandate an absolute right to assign. We reverse.
 
 I. BACKGROUND
 
 8
 Appellant, Delta Dental Plan of California ["Delta" ], is a nonprofit health care service plan, regulated by the State of California, California Health and Safety Code §§ 1340-1399.64 (West 1991) and providing dental benefits to employees under a welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ["ERISA" ], 29 U.S.C. §§ 1001-1461 (1988). The employees are beneficiaries of plan contracts entered into by their employers and Delta, usually under a collective bargaining agreement. Under these plans, Delta agrees to pay a percentage of the beneficiary's reasonable dental bill (typically 70%), and the beneficiary pays the "co-payment" balance (typically 30%).
 
 
 9
 Some of the dental service providers participate ["participating dentists"], while others do not ["non-participating dentists"]. A beneficiary is free to go to either a participating or non-participating dentist; in either case, Delta pays the same percentage of the bill. However, Delta pays participating dentists directly, while non-participating dentist must collect from the beneficiary.[1] In consideration for direct Delta payment, participating dentists agree to bill and attempt to collect the co-payment from beneficiaries, and to meet Delta quality standards. Neither obligation applies to non-participating dentists.
 
 
 10
 To circumvent non-direct payment, some non-participating dentists ask beneficiaries to assign their rights to receive Delta's checks to the dentists; in exchange, these dentists typically waive the co-payment. Delta's benefit plans expressly prohibit such assignments by beneficiaries,[2] and Delta refuses to mail indemnity checks to these dentists.
 
 
 11
 Delta says its main purpose for including non-assignment clauses is to police co-payment waivers by non-participating dentists. Co-payments, Delta argues, introduce beneficiary cost-sensitivity into the dental services market, which is lacking if a third party pays the entire cost of dental treatment. Beneficiaries who must pay some portion of their own dental bills are more inclined, Delta asserts, to shop competitively for dental services, and not over-use them.
 
 
 12
 Appellees, a group of non-participating dentists, sought a preliminary injunction ordering Delta to honor beneficiary assignments. Under ERISA, a beneficiary has standing to bring a civil action for non-payment. 29 U.S.C. § 1132(a). A health care provider with an allegedly valid assignment has the same standing. Misic v. Building Service Employees Health & Welfare Trust, 789 F.2d 1374, 1377-79 (9th Cir.1986). The district court granted the injunction request, Davidowitz v. Delta Dental Plan of California, 753 F.Supp. 304 (N.D.Cal.1990), and this appeal followed.
 
 
 13
 "Ordinarily, the grant or denial of a preliminary injunction is a matter within the discretion of the district court, and it will not be reversed absent an abuse of that discretion. [Citation omitted.] An exception to this rule applies when such grant or denial is based upon an erroneous legal premise; the order is then reviewable as is any other conlcusion of law." Douglas v. Beneficial Finance Co. of Anchorage, 469 F.2d 453, 454 (9th Cir.1972).[3] The district court approached the main issue in this case as a question of law: "The central question is whether an employee dental benefit plan provider may prevent beneficiaries from assigning their right to payment to dentists." On appeal, both sides have focused on this central legal question, and on the trial court's legal premise that ERISA prohibits non-assignment clauses. Thus, this Court reviews this central question as any other conclusion of law.[4]
 
 II. DISCUSSION
 
 14
 Section 206(d)(1) of ERISA states a "pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (emphasis added). But, ERISA is silent about assignment and alienation of welfare plans, such as Delta's.
 
 
 15
 This Court has held ERISA's express bar on assignments of pension plan benefits, and silence on welfare plan benefit assignments, means ERISA does not preclude welfare plan benefit assignments. Misic, Supra; see also, Mackey v. Lanier Collections Agency, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). Here, the contested issue of first impression is whether this Court should also conclude that ERISA prohibits welfare plan non-assignment clauses, and beneficiaries have an absolute right to assign irrespective of contrary language in the plan.
 
 
 16
 As a general rule of law, where the parties' intent is clear, courts will enforce non-assignment provisions. See, RESTATEMENT (SECOND) OF CONTRACTS § 322 comment a (1981).
 
 
 17
 Four state courts have held that similar non-assignment provisions in non-ERISA health benefit plans help keep medical costs down, do not violate public policy, and, are enforceable. See, Parrish v. Rocky Mountain Hosp. & Medical Servs. Co., 754 P.2d 1180 (Colo.Ct.App.1988); Kent General Hosp., Inc. v. Blue Cross & Blue Shield of Delaware, Inc., 442 A.2d 1368 (Del.1982); Augusta Med. Complex, Inc. v. Blue Cross of Kansas, Inc., 230 Kan. 361, 634 P.2d 1123 (1981); Obstetricians-Gynecologists, P.C. v. Blue Cross & Blue Shield of Nebraska, 219 Neb. 199, 361 N.W.2d 550 (1985).
 
 
 18
 Other than the district court below, apparently the only federal court to have ruled directly on whether assignment of ERISA welfare plan benefits can be prohibited is the district court for the District of Columbia in Washington Hospital Center Corp. v. Group Hospitalization and Med. Services, Inc., 758 F.Supp. 750 (D.D.C.1991). In a test case[5] of a Blue Cross anti-assignment clause, Washington Hospital held in a well-reasoned opinion that, while the Congressional silence on non-assignability of ERISA welfare benefits means that assignments are not barred, this does not suggest an affirmative policy favoring assignments so strong as to invalidate otherwise valid non-assignment clauses. The court held such clauses are valid and not contrary to public policy.
 
 
 19
 The Seventh Circuit was presented with the "waived co-payment" problem in Kennedy v. Connecticut General Life Ins. Co., 924 F.2d 698 (7th Cir.1991). Like the case at bar, the plaintiff health care provider in Kennedy sued under a waiver of co-payments and an assignment, where the plan had a non-assignment clause. The court noted the value of such co-payment and non-assignment provisions: "Co-payments sensitize employees to the costs of health care, leading them not only to use less but also to seek out providers with lower fees.... [which] makes medical insurance less expensive and enables employers to furnish broader coverage (or to pay higher wages coupled with the same level of coverage)." Id. at 699. The court noted that, if waiver of co-payments is allowed, "[p]atients prefer the lower outlays, but waivers annul the benefits of the co-payment system." Id. The health insurer "wants assurance that the patient has given enough thought to the need for (and price of) this medical care to be willing to pay. Patients who pay nothing have no reason to moderate their demands for medical service, and providers may inflate the bill...." Id. at 701. Kennedy held that the health care provider could not recover because he had waived payment direct from the patient and, under the policy, the insurer had no obligation to pay a charge which the patient was not legally obligated to pay. Thus, the court never reached the question of the non-assignment clause validity.
 
 
 20
 The issue in this case is basically the same as in Kennedy, and was squarely presented below. Therefore, we decide it in this case.
 
 
 21
 1. Appellees' argument that ERISA mandates assignability.
 
 
 22
 Appellees present three arguments to support their contention that ERISA mandates assignability:
 
 
 23
 a. The garnishment analogy.
 
 
 24
 Appellees analogize to creditor garnishment cases, and cite Mackey, supra, where a creditor obtained a money judgment against an ERISA welfare plan[6] and then successfully invoked Georgia's general garnishment statute to reach plan funds. The Supreme Court held ERISA did not forbid garnishment of an ERISA welfare benefit plan. Three months later, in Franchise Tax Board v. Construction Laborers Vacation Trust, 204 Cal.App.3d 955, 251 Cal.Rptr. 597 (1988), a California appellate court upheld a state tax levy on the taxpayer's ERISA plan benefits, despite a non-assignment clause in the plan. The court held that, pursuant to Mackey, ERISA did not preempt state law levy provisions, and the non-assignment clause did not change the result.
 
 
 25
 Appellees argue in effect that, if creditors can garnish plan proceeds notwithstanding a plan's non-assignment clause, then beneficiaries can also freely assign notwithstanding such a clause. But, the garnishment cases cannot be stretched that far. They simply hold that state law may provide a statutory mechanism for judgment collection, and such state procedure is not preempted by ERISA. The Franchise Tax Board case noted that voluntary agreement to a non-assignment clause could not displace that un-preempted procedure. Here, the dentists do not rely on a separate statutory right or process that requires voluntary assignments be honored. Thus, the question remains whether ERISA itself mandates assignability, and the garnishment cases provide no assistance in that analysis.
 
 
 26
 b. The spendthrift trust analogy.
 
 
 27
 In Retirement Fund Trust of Plumbing v. Franchise Tax Board, 909 F.2d 1266 (9th Cir.1990), the court analogized the plan trustee's duties to those of a spendthrift trustee, and concluded spendthrift trusts are not insulated from state tax levies. Appellees apply the spendthrift trust analogy to this case. They contend that, while creditors generally cannot garnish and beneficiaries cannot assign in a spendthrift trust, an exception to the general rule is that creditors providing necessities can garnish. See, RESTATEMENT (SECOND) OF TRUSTS § 157(b), and comment b (1981). Appellees contend their medical services constitute "necessities," American Security & Trust Co. v. Utley, 382 F.2d 451, 453 (D.C.Cir.1967), so beneficiaries should be able to assign.
 
 
 28
 The analogy is not a valid one. The purpose for the rule's exception is to assure beneficiaries will receive necessary basic assistance even though they cannot reach trust assets. RESTATEMENT (SECOND) OF TRUSTS § 157(b) comment c (1981). But, here, neither are the beneficiaries deprived of dental services, nor are the dentists prevented from receiving compensation. Under Delta's plan, the proceeds are payable directly to the beneficiaries. Moreover, under the plan, appellees may become participating dentists and receive direct payment.
 
 
 29
 c. The obligation to create ERISA common law.
 
 
 30
 Appellees urge this Court to read a provision into ERISA prohibiting non-assignment clauses under the Supreme Court's mandate to create ERISA common law. The Supreme Court has directed that, where ERISA is silent on an issue of employee benefit law, "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.' " Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)). Pilot explains courts must look to the underlying objectives and policies of ERISA when developing this common law. Pilot, 481 U.S. at 51-52, 107 S.Ct. at 1555.
 
 
 31
 In Misic, this Court noted how assignments by beneficiaries protect the beneficiaries and further ERISA's underlying policies. 789 F.2d at 1377. Therefore, appellees argue the Court should further develop ERISA common law, and read into ERISA an absolute right to assign.
 
 
 32
 We do not agree. While the beneficiary's right to assign when the plan is silent furthers ERISA policies, the absolute right to assign, notwithstanding a contract anti-assignment clause, does not necessarily further these policies. As discussed above, Delta cites ERISA policies that are benefited by its co-payment non-assignment structure, including promotion of consumer cost-sensitivity to hold down medical costs. This Court is unwilling to say that the underlying ERISA policies benefited by assignments outweigh the benefits promoted by Delta's co-payment non-assignment structure.
 
 
 33
 Any construction of ERISA by this Court must be consistent with Congressional intent.[7] Even if it could be said that required assignability promotes certain ERISA policies, this Court would not create a construction requiring assignability in the face of Congressional silence on the issue. Both the Supreme Court and this Court have stated that Congress carefully considered assignment of both pension and welfare plan benefits, and consciously decided to prohibit pension plan assignments but remain silent on welfare benefits.[8] The court cannot agree with Appellees that Congressional silence on welfare benefit assignment shows a Congressional intent to mandate assignability. On the contrary, if Congress had intended this result, it could have said so. Having carefully considered the subject and chose to remain silent, this Court must conclude that Congress intended not to mandate assignability, but intended instead to allow the free marketplace to work out such competitive, cost effective, medical expense reducing structures as might evolve.
 
 
 34
 2. Appellees' argument that the fiduciary relationship was violated.
 
 
 35
 In addition to their argument that ERISA mandates assignability, Appellees point out section 1104 of ERISA provides fiduciaries shall discharge their fiduciary duties solely to further the beneficiaries' interests. 29 U.S.C. § 1104(a)(1)(A)(i).[9] Appellees argue assignments are in the best interest of assigning beneficiaries, and so Delta violated its fiduciary duty to these particular beneficiaries when it drafted the plan containing the anti-assignment clause, and when it failed to honor the assignments.
 
 
 36
 However, at the time the terms of the plan were under negotiation, Delta was dealing at arms length, and was not yet a fiduciary. Schulist v. Blue Cross of Iowa, 717 F.2d 1127 (7th Cir.1983).[10] Additionally, although an ERISA fiduciary cannot avoid liability for breach of duty by claiming to be acting under a plan provision,[11] there is no liability unless a duty is actually breached or the conduct violates ERISA. Since the non-assignment clause does not violate a fiduciary duty or ERISA, it is no breach for Delta to insist on compliance with it.
 
 
 37
 This court is not called upon to weigh the wisdom or the public policy of payment assignability. That is the function of Congress. We merely hold the non-assignment clause is legal and is not prohibited by Congress.
 
 III. DISPOSITION
 
 38
 The court concludes that ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan. The preliminary injunction request should not have been granted. The order of the district court is reversed, and the matter is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Gary L. Taylor, U.S. District Judge, Central District of California, sitting by designation
 
 
 [1]
 If Delta pays a participating dentist 70%, the dentist must collect the remaining 30% co-payment from the patient. Non-participating dentists, theoretically, collect 100% from the patient, and the patient then submits a demand for 70% to Delta
 
 
 [2]
 Most of Delta's plans provide: "Payment for services provided by a dentist who is not a Participating Dentist shall be made to an Eligible Person, and shall not be assignable."
 
 
 [3]
 See also, Kennecott Copper Corp., Nevada Mines Division v. Costle, 572 F.2d 1349, 1356-57 (9th Cir.1978) (The district court granted preliminary injunction on an erroneous conclusion of law. Thus, the appellate court could freely examine the controlling legal question rather than apply the general rule that it review preliminary injunctions solely on an abuse of discretion basis.)
 
 
 [4]
 As the Court determines neither ERISA nor common law fiduciary principles prohibit non-assignment clauses, we need not address the district court's balancing of hardships analysis, which would be reviewable under the abuse of discretion standard
 
 
 [5]
 Plaintiff was a participating medical care provider, and could have sued directly in its own right, but sued instead as an assignee to test the non-assignment clause
 
 
 [6]
 "An employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1)
 
 
 [7]
 See, Pilot, 481 U.S. at 52, 107 S.Ct. at 1555
 
 
 [8]
 See, Misic, 789 F.2d at 1376: "The absence of any reference in the statute to assignment of the right to reimbursement for welfare benefits is in striking contrast to the complex and extensive provision prohibiting assignment of pension benefits, obviously the product of careful consideration."; see also, Mackey, 486 U.S. at 837, 108 S.Ct. at 2189: "[Congress] had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and not ERISA welfare benefit plans. In a comprehensive regulator scheme like ERISA, such omissions are significant ones." (Emphasis in the original)
 
 
 [9]
 ERISA defines a plan fiduciary as one who "exercises any discretionary authority or discretionary control respecting management of such plan...." 29 U.S.C. § 1002(21)(A). Delta does not contest that it is a plan fiduciary
 
 
 [10]
 Appellees reliance on Deak v. Masters, Mates & Pilots Pension Plan, 821 F.2d 572 (11th Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) is misplaced. In Deak, a fiduciary breached its duty when it inserted a clause, concerning suspending benefits upon a beneficiary's re-employment, into an ERISA plan, trying to modify an existing ERISA plan by inserting amendments
 
 
 [11]
 See, Central States v. Central Transport, Inc., 472 U.S. 559, 568, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447 (1985) ("[ERISA] trust documents cannot excuse trustees from their duties under ERISA...."); Brown v. Blue Cross & Blue Shield of Alabama, 898 F.2d 1556, 1563 n. 6 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991) ("The fiduciary duties section [of ERISA] [ ] requires adherence to the written plan documents unless their provisions conflict with statutory duties.... [cites omitted] One conflict might be identified between the contractual provision [at issue] [ ] and the standard of loyalty itself.")
 Appellees rely on Northeast Dept. ILGWU v. Teamsters Local Union No. 229, 764 F.2d 147 (3rd Cir.1985), which held that an "escape" clause barring coverage to beneficiaries who are also covered under their spouses policy violated ERISA, and that an ERISA fiduciary breached its duty by attempting to bar beneficiaries from recovery in reliance on the clause.