**RETIREMENT FUND TRUST OF THE PLUMBING, etc., et al., Plaintiffs–Appellants,**

v.

**FRANCHISE TAX BOARD, et al., Defendants–Appellees.**

**Nos. 88–6355, 88–6415.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1989.

Decided July 16, 1990.

James A. Bowles, Hill, Farrer & Burrill, Los Angeles, Cal., for plaintiffs-appellants.

Raymond B. Jue, Deputy Atty. Gen., Los Angeles, Cal., for defendants-appellees.

Before GOODWIN, Chief Judge, and SCHROEDER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Two ERISA-regulated trust funds and their trustees appeal a grant of summary judgment in favor of officials of the State of California. The district court held that the state's tax levy and withholding procedures are not preempted by federal law. We affirm in part and vacate in part.

# I

## FACTS

The Employee Retirement Income Security Act of 1974 ("ERISA" or "the Act")[1] established a comprehensive federal statutory scheme designed to protect two types of "employee benefit plans": "pension" plans[2] and "welfare" plans.[3] *See Hydrostorage, Inc. v. Northern California Boilermakers Local Joint Apprenticeship Comm.*, 891 F.2d 719, 726 (9th Cir.1989). Pension plans, to qualify under the statute, must "provide that benefits provided under the plan may not be assigned or alienated."[4] Welfare plans need not provide this protection.

The trusts that bring this appeal are, the parties agree, "employee benefit plans" regulated by ERISA. The Retirement Fund Trust of the Plumbing, Heating and Piping Industry of Southern California is a "pension" plan; the Vacation and Holiday Benefit Fund of Southern California is a "welfare" plan. The documents of both trusts prohibit alienation.[5]

ERISA includes a broad preemption provision whereby federal law will "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" under the Act.[6] The statute lists certain specific exceptions to the general rule of preemption,[7] but state tax laws are not included within any exception.[8]

Citing ERISA's preemption provisions and their own trust documents, the trusts brought these declaratory judgment actions against two groups of California state officials to challenge two types of tax collection procedures. The California Franchise Tax Board, through its members (collectively "the Board"), is charged with collecting the state's income tax.[9] It may levy against delinquent taxpayers[10] or re-

---

1. Pub.L. No. 93–406, 88 Stat. 829, codified as amended at 29 U.S.C. §§ 1001–1361. Title II of the Act, Amendments to the Internal Revenue Code Relating to Retirement Plans, 88 Stat. 898, is codified chiefly at 26 U.S.C. §§ 401–415.

2. "Pension benefit plans" provide retirement income. 29 U.S.C. § 1002(2), § 3(2) of the Act.

3. "Welfare benefit plans" provide health, legal, vacation or training benefits. 29 U.S.C. § 1002(1), § 3(1) of the Act.

4. 29 U.S.C. § 1056(d)(1), § 206(d)(1) of the Act.

5. The retirement trust's pension plan, Art. XI § 13, provides: "Any such pension ... shall be exempt from the claims of creditors or other claimants and from all orders, decrees, garnishments, executions or other legal or equitable process or proceedings to the fullest extent permissible by law."
The Retirement Fund Trust Agreement, Art. X, states: "No money ... in the trust or any benefits or money payable therefrom shall be subject in any manner by an employee ... to ... garnishment, alienation ... lien or charge...."
The Vacation and Holiday Trust Agreement, Article XI, states: "No right to amounts in an employee's individual vacation and holiday account shall be subject in any manner to alienation, sale, transfer, assignment, pledge or encumbrance of any kind."

6. 29 U.S.C. § 1144(a), § 514(a) of the Act.

7. Exceptions include state insurance, banking and securities laws, 29 U.S.C. § 1144(b)(2), § 514(b)(2) of the Act; criminal laws, 29 U.S.C. § 1144(b)(4), § 514(b)(4) of the Act; and domestic relations orders, 29 U.S.C. § 1144(b)(7), § 514(b)(7) of the Act.

8. In 1982, Congress amended the statute specifically to state that the preemption clause applied to "any State tax law relating to employee benefit plans." 29 U.S.C. § 1144(b)(5)(B)(i), § 514(b)(5)(B)(i) of the Act. *See infra*, Part III.

9. California's Personal Income Tax is codified at Cal.Rev. & Tax Code § 17001, et seq.

10. Cal.Rev. & Tax Code § 18817 provides:
    The Franchise Tax Board may ... require any ... person ... having in their possession, or under their control, any credits ... belonging to any taxpayer ... to withhold ... the amount of any tax ... due from the taxpayer ... and to transmit the amount withheld to the Franchise Tax Board at such times as it may designate.
    Cal.Rev. & Tax Code § 18818 provides: "Any employer or person failing to withhold the amount due from any taxpayer and to transmit the same to the Franchise Tax Board after ser-

quire regular withholding procedures.[11] The Employment Development Department ("EDD"), acting through its director, is charged with collecting the state's unemployment insurance tax.[12] EDD is authorized to require withholding.[13]

The Board has exercised its authority and filed levies on funds held in the vacation trust. It also requires withholding by the vacation trust in certain circumstances.[14] The Board does not apply either procedure to the pension trust.[15]

EDD requires withholding by the pension trust.[16] Beneficiaries may elect to have no

---

vice of a notice pursuant to Section 18817 ... is liable for such amounts."

Cal.Rev. & Tax Code § 18819(a) provides: "Any ... person required to withhold and transmit any amount pursuant to this article shall comply with the requirement without resort to any legal or equitable action in a court of law or equity."

These requests are known as "orders to withhold."

11. Cal.Rev. & Tax Code § 18805(a)(1) provides:

The Franchise Tax Board may, by regulation require any person, in whatever capacity acting ... having the control ... of items of income ... to withhold an amount, determined by the Franchise Tax Board to reasonably represent the amount of tax due, and to transmit the amount withheld to the Franchise Tax Board at such time as it may designate.

Cal.Rev. & Tax Code § 18815(a) provides:

Every person required to deduct and withhold any tax is hereby made liable for such tax.... Any person who fails to withhold from any payments any amount required to be withheld ... is liable for the amount withheld ... unless it is shown that the failure to withhold is due to reasonable cause.

This procedure is known. as "withholding at the source."

12. California's Unemployment Insurance Tax withholding procedures are codified at Cal. Unemp. Ins.Code § 13000, et seq.

13. Cal. Unemp. Ins.Code § 13000 provides: "The department shall have the powers and duties necessary to administer the reporting, collection, refunding to the employer and enforcement of taxes required to be withheld by employers pursuant to § 13020...."

Cal. Unemp. Ins.Code § 13020(a) provides: "Every employer who pays wages ... shall deduct and withhold from such wages ... a tax computed ... to produce ... a sum which is substantially equivalent to the amount of tax reasonably estimated to be due...."

Cal. Unemp. Ins.Code § 13028(a) provides: "For purposes of this division ... pensions, annuities, and other deferred income, as described in Section 3405 of the Internal Revenue Code, are

wages and subject to withholding under this division."

The Internal Revenue Code, 26 U.S.C. § 3405, "Special Rules for Pension, Annuities, and Certain Other Deferred Income," describes qualified pension plans. 26(a) U.S.C. § 3405(a)(1)–(2) establish optional withholding from pension payments.

14. The Board's administrative regulations require the vacation trust to withhold taxes from payments to nonresidents. Cal.Admin.Code tit. 18 § 18805–1 provides: "Every individual ... or association ... having the control ... of income ... by individuals who are nonresidents of this State must withhold from such income ... and transmit to the Franchise Tax Board the amount of tax specified...." *See also Id.* at § 18805–2 ("Withholding of tax at the source is required in the case of payments to nonresidents....").

It is unclear from the record before us whether the Board requires withholding on payments to residents.

15. Withholding is not required by the Board on pension funds or other funds subject to withholding by EDD. Cal.Admin.Code tit. 18 § 18805–2 provides: "Withholding of tax at the source is required ... except for wages subject to withholding under Section 13020 of the Unemployment Insurance Code...." The Board has instructed its staff not to issue "orders to withhold" against funds in qualified pension plans. The Board's instruction manual states, "At present, federal law protects benefits payable by such plans." Franchise Tax Board Collection Procedures Manual § 2410.15(1)(a) (Exhibit D to Declaration of Gary W. Norwood in Opposition to Plaintiff's Motion for Summary Judgment).

16. Cal.Admin.Code tit. 22 § 4328–1(a) provides: "Withholding of income tax is required under Section 13028 of the code from the taxable portion ... of payments of pensions, annuities and other deferred income ... to residents of this state ... unless the individual elects not to have the tax withheld." EDD states that this regulation has been effective since 1987, but since 1984 the retirement trust has voluntarily complied with withholding requirements. *See* Statement of Bill Corrie, Defendant's Narrative Statement of Witnesses at 7–8.

tax withheld.[17] EDD does not require withholding by the vacation trust.[18]

The trusts argue that these California tax collection procedures are state tax laws that "relate to" employee benefit plans, violate the trusts' own prohibitions on alienation, and are preempted by ERISA. The vacation trust has refused to comply with the Board's levy requests;[19] it has instead set aside levied money in order to safeguard the trust. It has not commenced withholding. The pension trust has complied with EDD's withholding requirement, but challenges the requirement.[20]

The state officials, in turn, argue that these suits are barred by the Tax Injunction Act.

The district court granted two summary judgments. First, the court held that the suits were not barred by the Tax Injunction Act and granted summary judgment in favor of the trusts. It then granted summary judgment in favor of the Board and EDD, holding that ERISA did not preempt tax levies against the vacation trust. The court did not reach the question of levies against the retirement trust, since the Board had not levied against that trust. The court also did not discuss the withholding statutes. As filed, however, the final judgment broadly held that none of the levy or withholding statutes was preempted.

■ The trusts timely appeal. The Board cross appeals, challenging the judgment on jurisdiction. We review the district court's grants of summary judgment de novo. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 629

(9th Cir.1987). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); T.W. Elec. Serv., 809 F.2d at 630.

We agree with the district court that jurisdiction was proper. We also agree that funds in the vacation trust are amenable to levy. We hold that funds in both trusts are amenable to the withholding procedures applied to them. However, we find that ERISA may preempt tax levies against funds in the retirement trust and therefore vacate the district court's judgment to the extent it holds that levies against pension funds are not preempted.

## II

## JURISDICTION

The Board and EDD argue that the Tax Injunction Act bars this suit because the trusts have an adequate remedy under California state law. They further argue that the district court should have abstained pending the outcome of a similar case brought in California state court. We disagree.

## A

■ The Tax Injunction Act bars federal courts from enjoining the collection of state taxes "where a plain, speedy and efficient remedy may be had in the courts

17. Withholding from retirement funds is not compulsory. Cal. Admin. Code tit. 22 § 4328–1(b)(1) provides: "Withholding is not required on any payment or distribution if the payee elects not to have withholding apply." However, if no election is made, failure to withhold becomes an enforceable lien 30 days after notice to the trust. Statement of Bill Corrie, supra, n. 16, at 8. This is consistent with federal tax collection procedures. See 26 U.S.C. § 3405(a)(2) (allowing individuals to elect no withholding).

18. EDD states that both trusts "appear to be payors subject to the withholding requirements" of the Unemployment Insurance Code. Declaration of Cynthia Z'Berg in Opposition to Plaintiff's Motion for Summary Judgment at 2. See

Cal. Admin. Code tit. 22 § 4328–1(a) (withholding required from payment of deferred income to state resident). The vacation trust also states that under the statute it is obligated to withhold. However, there is no indication in the record that the vacation trust is withholding or that EDD actually requires withholding by the vacation trust.

19. The statute requires that levied funds must be transmitted promptly after receipt of notice of the levy. Cal.Rev. & Tax Code §§ 18817–18. See supra, n. 10.

20. According to EDD, the retirement trust has voluntarily complied since 1984 with its withholding requirements. Statement of Bill Corrie, supra n. 16, at 8.

of such State." [21] ERISA does not create an exception to this statute, even though federal courts have exclusive jurisdiction over ERISA claims [22] and may enjoin other state actions that violate ERISA. [23] *General Motors v. California Bd. of Equalization*, 815 F.2d 1305, 1308 (9th Cir.1987), *cert. denied sub nom. General Motors v. Bennett*, 485 U.S. 941, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988); *Ashton v. Cory*, 780 F.2d 816, 821–22 (9th Cir.1986).

The Board concedes that under California law, the trusts cannot bring a direct action in state court to challenge the Board's income tax collection procedures. [24] *See General Motors*, 815 F.2d at 1308; *Ashton*, 780 F.2d at 819; *Capitol Industries/EMI v. Bennett*, 681 F.2d 1107, 1118–19 (9th Cir.1982), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982), 459 U.S. 1203, 103 S.Ct. 1189, 75 L.Ed.2d 435 (1983). The Board suggests that the trusts should instead comply with its levies and wait for a beneficiary to bring an action in state court.

■ We have held the California scheme to be adequate when state court proceedings involving the same parties and issues were already underway, providing an ERISA trust with an opportunity to present its preemption argument, if only defensively. *See Ashton*, 780 F.2d at 819–20. Absent an ongoing state action, however, we have rejected the indirect procedures available to a trust as neither plain, speedy nor efficient. *See General Motors*, 815 F.2d at 1308. ERISA trustees bear a fiduciary relationship to their beneficiaries [25] and are independently entitled to a judicial forum. *Id.* Because California law denies the trusts a judicial forum to challenge actions of the Board, it does not

satisfy the requirements of the Tax Injunction Act. *Id.* We conclude that the actions against the Board are not barred here.

■ California's unemployment tax collection procedures present a different problem, however, one the district court did not address. Under California's Unemployment Insurance Code, an "employing unit or other person by whom it was paid" may seek a refund of excess contributions and ultimately bring an action in state court against EDD. [26] The United States Supreme Court has held that this scheme provides an adequate remedy for an employer seeking a refund for its own contributions. *See California v. Grace Brethren Church*, 457 U.S. 393, 413–14, 102 S.Ct. 2498, 2510, 73 L.Ed.2d 93 (1982) (citing Cal.Unemp.Ins.Code §§ 1176–1185). California courts have also held that an employer, liable for his own share of unemployment contributions, has an adequate remedy at law in a refund action against EDD. *Lorco Properties, Inc. v. California Dept. of Benefit Payments*, 57 Cal. App.3d 809, 129 Cal.Rptr. 312 (1976).

Most of the provisions approved of by the *Grace Brethren* Court apply to the withholding procedures challenged by the trusts here. [27] EDD does not, however, rely on the sections of the code approved of by the *Grace Brethren* Court. Instead, EDD has consistently argued throughout this litigation that the retirement trust should follow the procedures set forth in Unemployment Insurance Code sections 1131, 1222, 1224 and 1241. Under these provisions, EDD issues an assessment for amounts not paid, the recipient petitions for reassessment through an administrative law judge and appeals board, and the assessment becomes final. The petitioner then pays the amount assessed, files a

**21.** 28 U.S.C. § 1341.

**22.** 29 U.S.C. § 1132(e)(1).

**23.** 29 U.S.C. § 1132(a)(3)(A).

**24.** The California state constitution prohibits any suit to prevent or enjoin the collection of a tax. Only after payment of the tax may suit be brought to recover the tax paid, as the legislature provides. Cal. Const. Art. XIII § 32. Under California's income tax code, the trusts cannot sue for a refund because they are not themselves taxpayers. Cal.Rev. & Tax Code §§ 19051, 19063.

**25.** 29 U.S.C. § 1132(a)(3), § 502(a)(3) of the Act.

**26.** Cal. Unemp. Ins.Code §§ 1177–1185, 1241.

**27.** Only Cal.Unemp.Ins.Code § 1176 does not apply. *See* Cal.Unemp.Ins.Code § 13003(5).

claim for a refund,[28] and brings an action in state court against EDD.

This procedure differs significantly from that approved by the *Grace Brethren* Court. As the trust points out, to invoke this procedure, it must first fail to pay the withholding that is due. Failure to pay withholding exposes the trust to substantial penalties and interest.[29]

EDD's instruction that the trust should follow a different statutory route, together with certain features of the omitted sections, leave us uncertain whether the "plain, speedy and efficient" remedy available to the employer/taxpayer in *Grace Brethren* is equally available to these nontaxpayer trusts.[30] We are without guidance on this point from the California Supreme Court. We therefore analyze EDD's argument under the sections of the code to which EDD has directed us.

▮ The Supreme Court instructs that the "plain, speedy and efficient" exception to the Tax Injunction Act must be narrowly construed. *Grace Brethren*, 457 U.S. at 413, 102 S.Ct. at 2510. The passage of a time period such as two years will not invoke the "speedy" exception. *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 521, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981). Nor will failure to award interest on the

amount ultimately refunded make a remedy any less "plain." *Id.* at 523–24, 101 S.Ct. at 1234. Requiring a party to pay the tax before seeking a refund does not make a remedy "inefficient." *Grace Brethren*, 457 U.S. 412–13, 102 S.Ct. at 2509–10. Similarly, requiring payment under protest, after which the government must apply for judgment in state court, to which the taxpayer must file an objection, is an adequate remedy. *Rosewell*, 450 U.S. at 508, 101 S.Ct. at 1226.

▮ On the other hand, the Court has found that a scheme under which the taxpayer must await a state collection procedure to present its federal claims has been found inadequate because "this is hardly a remedy that could have been invoked by appellant." *Georgia RR & Banking Co. v. Redwine*, 342 U.S. 299, 303 n. 11, 72 S.Ct. 321, 324 n. 11, 96 L.Ed. 335 (1952). Whether the state will invoke the action becomes a matter of speculation. *See Ashton*, 780 F.2d at 820. Certainty that a remedy exists is an important factor in establishing that a state court remedy is "plain." *Rosewell*, 450 U.S. 503, 516–17, 101 S.Ct. 1221, 1230–31, 67 L.Ed.2d 464 (1981); *Ashton*, 780 F.2d at 819.

▮ Moreover, to be "efficient," a remedy must impose no undue hardship or

---

28. Under Cal.Unemp.Ins.Code § 1179.5, payment of the amount assessed, when final, automatically becomes a claim for refund. EDD does not include § 1179.5 in the series of code sections to which it directs us, but at some point a petition for reassessment must be converted into a claim for refund. Only after a claim for refund has been filed may a claimant bring an action against EDD in state court. § 1241.

29. If no return is filed, a 10% penalty accrues. § 1126. If a deficient return is made, the penalty is also 10%. § 1127. If EDD determines that the failure to pay was motivated by intent to evade the statute, the penalty increases to 25%. § 1128. Interest accrues on any amount unpaid, exclusive of penalties. § 1129. If the assessment becomes final via administrative review, then an additional 10% penalty attaches. § 1135.

30. For example, under Cal. Unemp. Ins.Code §§ 1177–1178, "any person" may seek a refund. But if the tax paid includes "refundable worker contributions," then a refund is paid only to the

"employing unit or its successor, administrators or executors." The trust argues that it is not an "employing unit." The term "employing unit," defined in Cal. Unemp. Ins.Code § 135, does not even apply to the withholding provisions. Cal. Unemp. Ins.Code § 13002(1). EDD responds that the trusts "appear to be payors" under the statute. The term "payer" is not defined in statute, but only in the regulations. Cal.Admin. Code tit. 22 § 4328–1(f)(2). At the same time, there is little doubt that the retirement trust is an "employer" for the purposes of withholding. *See* Cal. Unemp. Ins.Code § 13005(b) (anyone who pays "wages" is an employer); Cal. Admin. Code tit. 22 § 4305–1.(f) ("employer" includes trusts); Cal. Unemp.Ins.Code § 13028(a) ("wages" include pensions); Cal.Admin. Code tit. 22 § 4309–1.(b)(1) (same).

The trust, of course, pays nothing but "worker contributions." On the other hand, it does not argue that its beneficiaries are making excessive contributions, only that withholding is improper. We are reluctant to make assumptions about the reach of this provision when the state itself has not attempted to explain more fully how its scheme works in practice.

unnecessary expenditure of time and energy. *Rosewell*, 450 U.S. at 518, 101 S.Ct. at 1231. The scheme outlined by EDD exposes the trusts to the risk of considerable penalties. The Supreme Court has never required a claimant to expose itself to the risk of penalties to achieve state judicial review.

We conclude that the statutory scheme as outlined for us by EDD falls closer to the remedy found inadequate in *Redwine* than the plain and adequate schemes approved of in *Grace Brethren* and *Rosewell*.[31] Despite the narrow construction we must give to the exceptions to the Tax Injunction Act, we find the remedies outlined for us here to fall within them. The penalties and speculative procedures required by EDD make the remedies available to the retirement trust neither "plain" nor "efficient." [32] Since California law does not provide either trust with a remedy that is sufficient to invoke the Tax Injunction Act, the trusts' federal court actions are not barred.

### B

■■■ The Board and EDD next argue that the district court should have abstained pending the outcome of a similar case being deliberated in state court. *See Franchise Tax Board of Calif. v. Construction Laborers Vacation Trust*, 204 Cal.App.3d 955, 251 Cal.Rptr. 597 (1988) (*CLVT III*). *CLVT III* was brought by the Board against a different trust fund under state law. The Board nevertheless argues that allowing these cases to proceed before *CLVT III* was resolved was "wrong in this case" because the issues are of "distinct significance" to the state.

The actions before us were brought by the trusts as federal law claims under ERISA. They involve different parties and different issues than *CLVT III*. Furthermore, ERISA grants federal courts exclu-

sive jurisdiction over such claims.[33] The trusts could not have initiated an action in state court in their fiduciary capacity. *General Motors*, 815 F.2d at 1309. Abstention is inappropriate under these circumstances. *Id.*

### III

### VACATION TRUST LEVY

Since ERISA preempts only state laws that "relate to" employee benefit plans, we next examine both tax collection procedures to determine whether they "relate to" the vacation trust. We conclude that they do not.

We look first at the Board's income tax levy procedure.

### A

ERISA preempts all state laws that "relate to" an employee benefit plan.[34] The provision is expansive, *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), and Congress intended the scope of the section to be as broad as its language. *See Shaw v. Delta Air Lines*, 463 U.S. 85, 98–100 & nn. 18–20, 103 S.Ct. 2890, 2900–01 & nn. 18–20, 77 L.Ed.2d 490 (1983); *General Motors*, 815 F.2d at 1309.

■■■ ERISA's preemption provision is not without limits, however. Although a state law that intrudes only indirectly on a plan may be preempted, *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981), a state law of general application with only a "tenuous" effect on an ERISA plan is not. *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21; *see, e.g., Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7, 19, 107

---

**31.** In doing so, we make no judgment whether the remedies approved of in *Grace Brethren* are, in fact, available to these trusts. We are simply unaware of any California interpretive authority that has so applied them, and the import of the scheme is not readily apparent to us.

**32.** Another court has found that similar penalties create uncertainty and potential hardship so that such procedures are not "plain" or "efficient." *See National Carriers' Conference v. Hef-*

*fernan*, 440 F.Supp. 1280, 1283 (D.Conn.1977) (*Heffernan I* ).

**33.** 29 U.S.C. § 1132(e), § 502(e) of the Act, provides that "the district courts of the United States shall have exclusive jurisdiction over civil actions ... brought by [a] fiduciary" under the statute.

**34.** 29 U.S.C. § 1144(a), § 514(a) of the Act.

S.Ct. 2211, 2215, 2221, 96 L.Ed.2d 1 (1987) (severance pay statute not preempted); *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550, 556 (6th Cir.1987) (municipal income tax not preempted).

In *Franchise Tax Board of California v. Construction Laborers Vacation Trust for So. Calif.,* 679 F.2d 1307 (9th Cir.1982) (*CLVT I*), *vacated,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), we considered a similar challenge to California's tax levy procedure. There we concluded that the levy procedure was preempted by ERISA's anti-alienation provision. *Id.* at 1309. A majority of the panel reasoned that a welfare trust was entitled to the same anti-alienation protection as a pension trust because such a result was "consistent with the statute ... if not demanded by it." *Id.* Judge Tang dissented. He would have held that pension protections did not extend to welfare plans. *Id.* at 1310–11 (Tang, J., dissenting). He also reasoned that the law fell into "a 'narrow category of cases which *affect* employee welfare plans but which do not *relate* to them.'" *Id.* at 1312 (emphasis in original) (citations omitted).

Our decision was vacated on jurisdictional grounds by the Supreme Court and the case was remanded to state court. *See Franchise Tax Board of California v. Construction Laborers Vacation Trust for So. Calif.,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (*CLVT II*). The United States Supreme Court subsequently decided *Mackey v. Lanier Collection Agency & Svc., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). There, the Court held that a general state garnishment procedure was *not* preempted by ERISA. In doing so, the Court cited Judge Tang's dissent in *CLVT I* as representing the now "virtually unanimous view of federal and state courts" that the attachment of funds in a welfare trust does not "relate to" the trust and is not preempted. *Mackey,* 486 U.S. at 832 & n. 6, 840, 108 S.Ct. at 2186–87 & n. 6, 2190–91. *Mackey's* reasoning has since been followed by other courts. *See Nichol v. Pullman Standard, Inc.,* 889 F.2d 115, 120–21 (7th Cir.1989).

The California court, on remand, applied *Mackey* to *CLVT II* and concluded that a tax levy on funds in a welfare trust is not preempted. *CLVT III,* 251 Cal.Rptr. at 603–04. We agree with the California court that the Supreme Court's decision in *Mackey* must now control our view of the California levy procedures challenged here.

The *Mackey* Court's reasoning was twofold. First, the Court reasoned that Congress did not intend to forbid garnishments because it allowed ERISA plans to "sue or be sued"; if a suit were successful, some collection procedure would be required. *Id.,* 486 U.S. at 831, 108 S.Ct. at 2186. Congress could not, therefore, have intended that the attachment of funds in a welfare plan would "relate to" a plan. *Id.* at 834, 108 S.Ct. at 2187–88. Second, Congress did not make welfare trusts inalienable, a protection it granted only to pension funds; to apply the same protection to both would be to render the pension provision redundant. *Id.* at 836–37, 108 S.Ct. at 2188–89.

The trusts argue that *Mackey* should be distinguished from the case before us in three respects. First, they argue that tax levies are not judicial process, and therefore are not authorized by the "sue or be sued" language of ERISA. Next, they argue that § 514(b)(5) of the Act specially preempts all state tax laws, a provision that was not at issue in *Mackey.* Finally, they argue that the trust funds in *Mackey* were not governed by documents containing anti-alienation provisions, as these trusts are. We reject each of these arguments in turn.

**B**

The Supreme Court has already held, in other contexts, that the judicial process of garnishment is functionally indistinguishable from the nonjudicial process of tax collection. *See Franchise Tax Board of California v. United States Postal Service,* 467 U.S. 512, 523, 104 S.Ct. 2549, 2555, 81 L.Ed.2d 446 (1984) (*USPS*), citing *Bull v. United States,* 295 U.S. 247, 259–60, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) (tax assessment "is given the force of a

judgment").[35] The *Mackey* Court itself saw no distinction between a garnishment procedure and a tax levy but characterized its analysis as reaching the very question it had reserved in *CLVT II. See Mackey*, 486 U.S. at 834, 108 S.Ct. at 2187–88 (citing *CLVT II*, 463 U.S. at 7, 26 n. 30, 103 S.Ct. at 2845, 2855 n. 30). The *Mackey* Court also cited *USPS* with approval. *See Mackey*, 486 U.S. at 834 n. 9, 108 S.Ct. at 2187–88 n. 9. That some garnishment actions have been singled out by Congress to be treated differently than others, *see id.* at 840 n. 15, 108 S.Ct. at 2190–91 n. 15, does not by itself require that special treatment be accorded to tax levies.

Nor does the Court's analysis of the "sue or be sued" language of ERISA help the trusts. That language was not cited by the *Mackey* Court because it *authorized* garnishments, but to show that Congress did not intend to *forbid* them. *Id.* at 831, 108 S.Ct. at 2186. Indeed, the Court found it significant that Congress provided *no* mechanism for collecting a judgment against a trust. *Id.* at 833, 108 S.Ct. at 2187.

Congressional intent is the touchstone of preemption analysis under ERISA. *Pilot Life*, 481 U.S. at 45, 107 S.Ct. at 1551; *Shaw*, 463 U.S. at 95, 103 S.Ct. at 2898. The *Mackey* Court looked to ERISA's "sue or be sued" language to determine that Congress could not have intended that general state law attachment procedures would "relate to" a welfare plan. *Id.*, 486 U.S. at 834, 108 S.Ct. at 2187–88. Unless some contrary expression has been made, the same congressional intent applies here.

### C

The trusts argue that in § 514(b)(5) of the Act, Congress manifested a special in-

tent to preempt all state tax laws. Section 514(b)(5)(B) of the Act, codified at 29 U.S.C. § 1144(b)(5)(B), provides:

> (B) Nothing in subparagraph (A) shall be construed to exempt from [§ 514(a) ]—(i) any State tax law relating to employment benefit plans.

The trusts contend that because tax laws are specially mentioned, all tax levies must be preempted. We disagree. Our analysis of §§ 514(a) and 514(b)(5) leads us to conclude the opposite: that Congress intended tax laws to be treated like every other state law, receiving the same "relates to" analysis, and lending even stronger support to *Mackey*'s application here.

First, by its terms, § 514(b)(5)(B) applies only to state tax laws "relating to" ERISA plans. Furthermore, it is not an affirmative instruction but a negative one: the section states only that state tax laws are *not* an exception to the general preemption provision. Thus the language of § 514(a) controls the reach of § 514(b)(5), not vice versa.

Second, the legislative history of §§ 514(a) and 514(b)(5) reveals that Congress intended that the same preemption analysis should apply to state tax laws as to other state laws. In 1974, when Congress first enacted § 514(a), it intended ERISA's preemptive scope to be broad and its exceptions to be narrow.[36] State tax laws were not among the original exceptions. In fact, concerned that the proposed preemption provisions were too "vague" and "broad," the Secretary of Labor proposed this alternative language: [37]

> Notwithstanding the provisions of this section, a state shall have the authority

---

**35.** The *USPS* Court concluded: "The operation of California's tax collection process makes it clear that there is no meaningful difference between an order to withhold issued by the Board and a garnishment order issued by a court." 467 U.S. at 522–23, 104 S.Ct. at 2555.

**36.** The legislative history of the 1974 language has been well documented. *See Shaw*, 463 U.S. at 98–100 & nn. 18–20, 103 S.Ct. at 2900–01 & nn. 18–20; *Hewlett–Packard Co. v. Barnes*, 425 F.Supp. 1294, 1298–1300 (N.D.Cal.1977), *aff'd*, 571 F.2d 502 (9th Cir.), *cert. denied*, 439 U.S.

831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978). Only banking, securities, insurance, and criminal laws were excepted. An exception for domestic relations law was added later.

**37.** Administration Recommendations to the House and Senate Conferees on HR 2 to Provide for Pension Reform (April, 1974), *reprinted in* 3 Legislative History of the Employee Retirement Income Security Act of 1974 Prepared by the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare 5050, 5147 (1976) ("ERISA Legislative History").

to prescribe the rules and regulations governing the tax qualifications and taxation of contributions, distributions or income, of an employee benefit plan. . . . This proposal was rejected in conference.[38]

In 1982, the 97th Congress adopted § 514(b)(5).[39] The amendment was designed to create a narrow exception from ERISA preemption for Hawaii's prepaid health care law. The Hawaii law had been enacted about the same time as ERISA, but because it required private plans to provide specific health benefits, it could not withstand ERISA preemption analysis. *See Standard Oil Co. of California v. Agsalud*, 442 F.Supp. 695, 696 (N.D.Cal. 1977) (*Agsalud I*), aff'd, 633 F.2d 760, 762 (9th Cir.1980) (*Agsalud II*), aff'd, 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981). Congress, wishing to narrowly override the *Agsalud* cases to allow the experimental program, but fearing it could set a precedent, created this exception specifically for the Hawaii law.[40]

The amendment had a long history before it was adopted and the tax language

at issue here first appeared in earlier versions of the bill. When first introduced in the Senate in 1977,[41] the amendment did not mention tax laws. The amendment was proposed in response to an opinion letter from the Department of Labor saying the Department believed Hawaii's law was preempted by ERISA.[42] Later that year, the *Agsalud I* court came to the same conclusion. The court had rejected Hawaii's argument that the law was an exercise of its taxing power and immune from federal preemption,[43] *see Agsalud I*, 442 F.Supp. at 710–11, but no mention of state tax laws was made when the bill was introduced.

State tax laws were first mentioned in connection with ERISA's preemption provision in 1979. That year, the Hawaii amendment was introduced again into the Senate, still without tax language.[44] But Senator Javits, in introducing the 1979 bill, urged Congress to endorse the recent ruling in *National Carriers' Conference Comm. v. Heffernan*, 454 F.Supp. 914 (D.Conn.1978)

---

**38.** As another court concluded, "in the face of a formal request to exempt state taxation from the narrow preemption provisions contained in the House and Senate versions of the bill, Congress not only declined the request but adopted far broader language. . . . Thus Congress, alerted to the taxation issue, chose not to exempt the taxing power from ERISA's broad preemption of state law." *National Carriers' Conference Comm. v. Heffernan*, 454 F.Supp. 914, 917 (D.Conn.1978) (*Heffernan II*).

**39.** Act to Amend the Internal Revenue Code of 1954, Pub.L. 97–473, § 302, 96 Stat. 2605, 2611 (codified at 29 U.S.C. § 1144(b)(5)). The amendment was debated and passed by the 97th Congress in December, 1982. It was signed into law after adjournment on January 14, 1983, and has been labeled a 1983 amendment. However, it remains an enactment of the 97th Congress. *See* 128 Cong. Rec. 33439 (1982) (listed as H.R. 5470).

**40.** House members commenting on the bill were explicit in explaining that the provision was intended to "reaffirm the broad federal preemption of state laws as they relate to employee benefit plans as was the original intent of ERISA." 128 Cong. Rec. 30355 (1982) (statement of Rep. Erlenborn). Agreement on the amendment was "reached solely on the basis . . . that the Hawaii law is an unusual special case," *id.* at 30356; it was "not to be considered as a

precedent for extending the exception to other state laws." *Id.* at 30352 (statement of Rep. Rostenkowski).

**41.** S. 1383, 95th Cong., 1st Sess., 123 Cong. Rec. 12169–70 (1977). The bill was introduced by the two Senators from Hawaii, Sen. Matsunaga and Sen. Inouye. A similar bill was introduced into the House. H.R. 6944, 95th Cong., 1st Sess., 123 Cong.Rec. 13706 (1977).

**42.** Dep't of Labor, Office of Employee Benefits Security, Advisory Op. Ltr. No. 75–22, *reprinted in* [1975–79 Transfer Binder] Pens. Plan Guide (CCH) ¶ 25,136. *See* 123 Cong. Rec. 12170 (1977) (statement of Sen. Matsunaga) (*describing opinion letter*).

**43.** This argument was based on the principle that "traditional areas of sovereignty" were accorded deference under the Tenth Amendment. *See Nat'l League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). *Nat'l League of Cities* was overruled by *Garcia v. San Antonio Met. Trans. Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Since *Garcia*, the traditional sovereignty analysis has been unimportant. *See Neusser*, 810 F.2d at 555 n. 2.

**44.** S. 209, 96th Cong., 1st Sess, § 155(1), 125 Cong. Rec. 933, 937 (1979) (ERISA Improvements Act of 1979).

(*Heffernan II*).[45] The *Heffernan II* court had held that a state tax directed exclusively at ERISA benefits was preempted. *Id.* at 915.

The 1979 amendment broadly included all state laws "substantially identical" to Hawaii's.[46] Hearings conducted on this amendment elicited strong opposition.[47] In response, the amendment's chief architect, Senator Matsunaga, narrowed the amendment considerably.[48] The next version of the bill, introduced in 1980, contained limiting language, including the tax provision that is now § 514(b)(5).[49] The narrowed version was approved twice by the Senate during 1980,[50] though it was ultimately deleted in conference to ensure passage of the larger bill of which it was a part.[51] In 1981, Hawaii's congressmen again introduced the amendment with the tax language intact.[52]

Finally, in 1982, the Hawaii amendment, with tax language intact, was incorporated by the Senate as an amendment to a House bill amending the Internal Revenue Code.[53] When he reported the bill on behalf of the Senate Finance Committee, Senator Dole explained:[54]

> The bill amends ERISA to provide that Hawaii law relating to employer maintained health insurance plans would not be preempted by ERISA to the extent that the Hawaiian law does not ... *impose tax liability on insurance premiums or benefits.*

This explanation is consistent with the holding of *Heffernan II.*

Committee reports on the 1982 bill emphasized Congress' desire to maintain ERISA's existing preemption standards. The Senate report states that "the provision does not affect the status, under the preemption provisions of ERISA, of any State tax law *relating to* employee benefit plans."[55] The conference committee report explained: "Preemption is *continued* with respect to ... any State tax law *relating to* employee benefit plans."[56] The bill was passed by both houses in December, 1982.

---

45. 125 Cong. Rec. 947 (1979) (statement of Sen. Javits).

46. S. 209, § 155(1), 125 Cong. Rec. 937 (1979).

47. *See, e.g.,* ERISA Improvements Act of 1979: Hearings on S. 209 Before the Senate Comm. on Labor and Human Resources, 96th Cong., 1st Sess., 1133, 1144 (1979) (statement of Nat'l Ass'n of Manufacturers); Miscellaneous Pension Bills: Hearings on S. 209 Before the Subcomm. on Private Pension Plans and Employee Fringe Benefits of the Senate Comm. on Finance, 96th Cong., 1st Sess., 331, 347 (1979) (Supplementary Statement of ERISA Industry Committee (ERIC)) ("ERIC strongly opposes permitting states to impose non-uniform requirements on welfare plans covered by ERISA.").

48. Senator Matsunaga would later explain that the bill received "strong opposition," particularly from U.S. Chamber of Commerce and National Association of Manufacturers. *See* 128 Cong. Rec. 26903 (1982) (statement of Sen. Matsunaga).

49. S. 1076, 96th Cong., 2d Sess., § 409(a), 126 Cong. Rec. 20148, 20175 (1980) (proposed amendment to H.R. 3904).
   At the time the bill was introduced, no explanation of the tax language was given. *See* 126 Cong. Rec. 20208 (statement of Sen. Williams and Sen. Long) (1980); *id.* at 20243–45 (statement of Sen. Matsunaga). However, Hawaii had recently argued again that its law was an exercise of its taxing power and immune from preemption. In August, 1980, we affirmed *Agsalud I* and again rejected Hawaii's argument. *See Agsalud II*, 633 F.2d at 765 (distinguishing *Heffernan II*).

50. *See* 126 Cong. Rec. 20247 (July 29, 1980); 126 Cong. Rec. 23280 (Aug. 26, 1980).

51. The amendment was immediately reintroduced as a separate bill, S. 3151, 96th Cong., 2d Sess., 126 Cong. Rec. 27072 (1980).

52. S. 1232, 97th Cong., 1st Sess., 127 Cong. Rec. 10486 (1981). *See also* H.R. 4046, 97th Cong., 1st Sss., 127 Cong. Rec. 14807 (1981).

53. Proposed amendment to Periodic Payment Settlement Act of 1982, H.R. 5470, 97th Cong., 2d Sess., § 301(a), 128 Cong. Rec. 26898, 26900 (1982).

54. 128 Cong. Rec. 26902 (1982) (statement of Sen. Dole) (emphasis added).

55. S.Rep. No. 97–646, 97th Cong., 2d Sess., 18, *reprinted in* 1982 U.S.Code Cong. & Admin. News 4580, 4595–96 (emphasis added).

56. H.R.Conf.Rep. No. 97–984, 97th Cong., 2d Sess., 18, *reprinted in* 1982 U.S.Code Cong. & Admin.News 4598, 4603 (emphasis added).

Meanwhile, in June, 1982, we had decided *CLVT I*. The trusts argue that because *CLVT I* was decided before the amendment was adopted, Congress necessarily intended to codify our holding in that case. However, no mention of *CLVT I* was made by the bill's sponsors, in the debates, or in the reports. By contrast, both *Agsalud* decisions and *Heffernan II* had been mentioned repeatedly during the amendment's long history. Moreover, the *CLVT I* majority did not hold that the California law "related to" an ERISA trust, but relied on ERISA's anti-alienation provision to find the law preempted. *See CLVT I,* 679 F.2d at 1309. In addition, by the time the amendment was enacted, at least one other court had disagreed with the majority opinion in *CLVT I* and expressed approval of Judge Tang's dissent. *See Local 212 Int'l Bhd. of Electrical Workers Vacation Trust Fund v. Local 212 IBEW Credit Union,* 549 F.Supp. 1299, 1301 (S.D.Ohio 1982), *aff'd,* 735 F.2d 1010, 1011 (6th Cir. 1984) (per curiam) (adopting district court's opinion as its own).

Nevertheless, the trusts argue that a committee report from the following Congress shows that the 97th Congress did intend to codify our holding in *CLVT I*. In 1984, the 98th Congress amended ERISA to allow garnishment of ERISA pension and welfare plans to satisfy domestic relations orders such as child support and alimony.[57] At that time, the House Committee on Labor and Education stated in its report: "[T]he Committee reasserts that a state tax levy on employee welfare benefit plans is preempted by ERISA (see the holding of the 9th Circuit in *Franchise Tax Board [CLVT I]...*)." [58]

The committee's language does suggest what the committee believed, in 1984, was the current reach of the 1974 Act and the

1982 amendment. *See Mackey,* 486 U.S. at 840, 108 S.Ct. at 2190–91. But the *Mackey* Court, examining the same committee report, concluded that absent an amendment to the original section, the report was not determinative of the reach of § 514(a). *See id.* at 840, 108 S.Ct. at 2190–91. It is, of course, to § 514(a) that § 514(b)(5) refers.

We conclude that this report is also not determinative of the reach of § 514(b)(5). First, the views of a subsequent Congress do not determine the intent of an enacting Congress. "[I]t is the function of the courts and not the Legislature, much less a Committee of one House of the Legislature, to say what an enacted statute means." *Pierce v. Underwood,* 487 U.S. 552, 566, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988). Here, the subsequent report is not from the same house, much less the same committee, that prepared the Hawaii amendment, and therefore "is not an explanation of any language that the [1984] Committee drafted." *Id.* at 566–67, 108 S.Ct. at 2551.

Second, no other committee that reported on the 1984 bill mentioned *CLVT I* or tax levies.[59] The 1984 amendment concerned domestic relations garnishments, not state tax laws, and the debates focused on that issue.[60] *Mackey,* 486 U.S. at 838.

More importantly, the 1984 report "reasserts" a body of law that was not yet established. In 1982, the application of ERISA to state tax laws was by no means settled. By the time of the 1984 report, *CLVT I* had already been vacated and the Supreme Court had specifically reserved the question on the merits. By June, 1984, the Sixth Circuit had affirmed *Local 212* and adopted that opinion as its own. *See Local 212,* 735 F.2d at 1011. Since that time, other courts have not followed *CLVT*

---

57. Retirement Equity Act of 1984, Pub.L. No. 98–397, 98 Stat. 1426 (1984) (codified in pertinent part at 29 U.S.C. § 1144(b)(7)).

58. H.R.Rep. No. 98–655, pt. 1, 98th Cong., 2d Sess., 42 (1984).

59. See H.R.Rep. No. 98–655, pt. 2, 98th Cong., 2d Sess. 6, 17–18 (1984) (House Ways and Means Committee); S.Rep. No. 98–575, 98th

Cong., 2d Sess., 18–19 *reprinted in* 1984 U.S. Code Cong. & Admin.News 2547, 2549, 2564–65 (Senate Finance Committee).

60. See, *e.g.,* 130 Cong. Rec. H8756 (daily ed. Aug. 9, 1984) (statement of Rep. Erlenborn) (amendment "preserves and clarifies" ERISA's original broad preemption while "carving out an appropriate and well-defined exception for domestic relations orders.").

*I*[61] and the Supreme Court has implicitly endorsed Judge Tang's dissenting opinion. As the *Mackey* Court observed, even we appear to have abandoned the majority opinion. *Mackey*, 486 U.S. at 832 n. 6, 108 S.Ct. at 2186 n. 6.

As did the *Mackey* Court, we decline to find this single reference to a vacated case, made by one committee of one house of a subsequent Congress, to be binding on our determination of the reach of § 514(b)(5)(B) or § 514(a), to which it refers. We conclude that, rather than create a special application of ERISA preemption analysis, Congress intended, when it enacted § 514(b)(5), that state tax laws should receive precisely the same analysis as other state laws. Only state tax laws that "relate to" ERISA plans are preempted.

### D

Finally, the trusts argue that *Mackey* may be distinguished because their trust documents prohibit alienation or assignment. They contend that requiring the trustees to honor a state tax levy would force them to violate the terms of their own trust agreements.

Section 404(a)(1)(D) of the Act, 29 U.S.C. § 1104(a)(1)(D), requires ERISA trustees to act as fiduciaries "in accordance with the documents and instruments governing the plan," but only "insofar as such documents and instruments are consistent with the provisions of [ERISA]."[62] Thus, although trust documents define the role of trustees, the analysis of a trustee's powers and duties does not stop there. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 568, 105 S.Ct. 2833, 2839, 86 L.Ed.2d 447 (1985). Trust documents cannot excuse ERISA trustees from their duties under ERISA and the documents must be construed in light of ERISA's policies. *Id.* Congress derived

the Act's provisions relating to fiduciaries from common law trust principles. *Id.* at 569–571, 105 S.Ct. at 2839–40; *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, ——, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989); *Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1411 (9th Cir.1988).

Under the law of trusts, a spendthrift trust cannot insulate a beneficiary from a claim by the state based on income or other tax obligations. *See* 2 A. Scott, *Law of Trusts* § 157.4 at 1222–24 (3d ed. 1967); G. Bogert & G. Bogert, *Law of Trusts and Trustees* § 224 at 464 (2d rev.ed. 1980); Restatement (Second) of Trusts § 157(d) at 328, 331 (1959).

Congress carefully chose to grant pension funds protection from alienation, but it gave no similar protection to welfare trusts. *See Mackey*, 486 U.S. at 836–37, 108 S.Ct. at 2188–89. Other courts examining this issue have held that anti-alienation provisions in the documents of a welfare trust cannot create a protection for the trust that Congress did not intend. *See Local 212*, 549 F.Supp. at 1302; *Elec. Workers v. IBEW–NECA Holiday Trust*, 583 S.W.2d 154 (Mo.1979); *CLVT III*, 251 Cal.Rptr. at 603–04. We agree that the vacation trust's anti-alienation provision is inconsistent with ERISA and cannot alone overcome this long-standing principle of trust law.

### E

We conclude that California's income tax levy procedure must receive the same "relates to" analysis as any other state law under § 514(a). On this point, we find *Mackey* controlling. The general rule is that a state law "relates to" an ERISA plan if it singles out an ERISA plan or "if it has a connection with or reference to such a plan." *See Mackey*, 486 U.S. at 829, 838 n. 12, 108 S.Ct. at 2185, 2189 n. 12. A "neutral" state law of general application

---

**61.** On remand, the California state court rejected our reasoning. *See CLVT III*, 251 Cal.Rptr. at 603–04.

**62.** ERISA authorizes suits against fiduciaries for breach of this duty. *See Firestone Tire & Rub-*

*ber Co. v. Bruch*, 489 U.S. 101, ——, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989); 29 U.S.C. § 1132(a)(3), § 502(a)(3) of the Act.

with a "tangential" impact on a plan does not "relate to" ERISA and is not preempted. *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. California's tax levy procedure does not single out ERISA trusts. It is a neutral law of general application authorizing the attachment of funds of delinquent taxpayers. General state attachment procedures do not "relate to" ERISA welfare plans and are not preempted by ERISA. *Mackey*, 486 U.S. at 834, 108 S.Ct. at 2187–88.

We reach the same conclusion under the law of this circuit. We have held that to "relate to" an ERISA trust, a state law must also "purport to regulate" it.[63] *See Hydrostorage*, 891 F.2d at 729. Other courts have noted that preempted laws "interfere with the calculation of benefits owed to an employee." *See Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir.) (surveying cases and holding state escheat law not preempted), *cert. denied,* — U.S. —, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989).

California's tax levy procedure does not affect the calculation of benefits or otherwise "purport to regulate" the vacation trust. Like the garnishment in *Mackey*, the funds are attached "after a plan determine[s] the amount of benefits the employee [is] eligible to receive. It does not affect the plan's initial calculation of an employee's benefits." *Borges*, 869 F.2d at 147 n. 3. That the levy procedure may result in a lower actual payment to the beneficiary is irrelevant. *Mackey*, 486 U.S. at 831–32, 835, 108 S.Ct. at 2186–87, 2188.

A tax levy is also not a tax. It is a collection process for taxes due and owing. *See USPS*, 467 U.S. at 522, 104 S.Ct. at 2555; *CLVT I*, 679 F.2d at 1312 (Tang, J.,

dissenting). A tax levy does not "relate to" a trust in the way that a tax directed at an ERISA plan would. *Cf. General Motors*, 815 F.2d at 1308; *Heffernan II*, 454 F.Supp. at 915.

Like the general garnishment procedure at issue in *Mackey*, California's income tax levy only tenuously affects the vacation trust itself. We conclude that California's tax levy procedure does not "relate to" ERISA welfare plans and is not preempted.

## IV

## VACATION TRUST WITHHOLDING

We next examine the Board's withholding procedures as applied to the vacation trust.[64]

The trusts argue that withholding "relates to" the vacation trust because amounts withheld are calculated on the basis of plan payments. In *General Motors*, 815 F.2d at 1309–10, we held that a tax on gross insurance premiums, computed on the basis of benefits paid by an ERISA plan, "related to" the plan. Although we ultimately decided on other grounds that the tax was not preempted, we noted that "the explicit use of plan payments in *calculating* the *tax*," satisfied the threshold requirements of ERISA "relates to" analysis, in part because "reference to plan activities [was] unavoidable." *Id.* at 1309 (emphasis added). *See also Heffernan II*, 454 F.Supp. at 915 (state taxes directed exclusively at ERISA benefits are preempted). The trusts contend that "reference to plan activities" is likewise "unavoidable" in computing withholding and therefore it also "relates to" the trust.

---

**63.** This requirement is found in the Act's definition of a "state." 29 U.S.C. § 1144(c)(2), § 514(c)(2) of the Act, defines a state as: "A State, any political subdivisions thereof, or any agency or instrumentality of either, which *purports to regulate,* directly or indirectly, the terms and conditions of employment benefit plans covered by this subchapter." (Emphasis added.)

Not all courts have adopted this two-part test. *See Iron Workers Mid–South Pension Fund v. Terotechnology Corp.,* 891 F.2d 548, 552–53 (5th Cir.1990); *Authier v. Ginsberg,* 757 F.2d 796, 799

n. 4 (6th Cir.), *cert. denied,* 474 U.S. 888, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985).

**64.** Both the Board and EDD administer withholding statutes. The Board requires withholding by the vacation trust on payments to nonresidents. *See supra,* n. 14. It does not require withholding on payments from which EDD requires withholding. *Id.* EDD is authorized to require withholding from payments to residents; it is unclear from the record whether EDD actually requires withholding by the vacation trust. *See supra,* nn. 16, 18.

We disagree. The amount withheld is based on the state's estimate of the employee's total income from *all* sources, of which ERISA income is only a part.[65] Furthermore, withholding, like a tax levy, is not itself a *tax*. It is a procedure for tax collection. In addition, *General Motors* was decided before the Supreme Court's decision in *Mackey,* in which the Court held that state garnishment procedures are not preempted by ERISA.

The trusts nevertheless argue that withholding "dissipates" funds accumulated for recipients' future beneficial use, citing *Misic v. Building Svc. Employees Trust,* 789 F.2d 1374, 1377 n. 2 (9th Cir.1986). *Misic* does not help the trusts. In *Misic,* we held that the assignment of ERISA welfare benefits was *not* preempted. The language to which the trusts refer is a reference to our now-vacated decision in *CLVT I.*

Tax withholding procedures "dissipate" ERISA benefits only to the extent the underlying tax dissipates the benefits. The trusts do not challenge the tax itself, or suggest that ERISA welfare benefits are tax-free income. Indeed, Congress has demonstrated elsewhere that it knows how to create tax-free income when it intends to do so.[66] Here, Congress has preempted only state tax laws that "relate to" ERISA plans.

The Sixth Circuit has held that a neutral municipal income tax that "applies to employees without regard to their status as ERISA participants" does not "relate to" ERISA plans. In *Neusser,* 810 F.2d at 556, the court held that income that would otherwise be contributed to an ERISA welfare plan was taxable and subject to withhold-

ing like all other income. *Id.* We agree with the Sixth Circuit's analysis. The trusts attempt to distinguish *Neusser* by arguing that there, the tax was withheld from payments *to* the trust, while California's tax is withheld on payments *from* the trust. This argument is foreclosed by *Mackey.* ERISA does not guarantee the receipt of welfare plan *benefits,* but protects only welfare *plans. Mackey,* 486 U.S. at 831–32, 108 S.Ct. at 2186–87; *see also Ft. Halifax,* 482 U.S. at 7, 19, 107 S.Ct. at 2215, 2221.

California's tax withholding procedures do not otherwise "relate to" the vacation trust. The statutes do not single out ERISA trusts. *See Mackey,* 486 U.S. at 830, 108 S.Ct. at 2185. The procedures have no impact on funds while held in trust and only a tangential impact on the administration of the plan.

We conclude that California's tax withholding procedures, like its tax levy, do not "relate to" the vacation trust and are not preempted by ERISA.

## V

## RETIREMENT TRUST LEVY AND WITHHOLDING

We next examine the two procedures as they apply to the retirement trust. We conclude that the Board's tax levy procedure is prohibited by ERISA's anti-alienation provision, but EDD's elective withholding procedure is not.

## A

■ We first examine the Board's tax levy procedure.

65. See Cal.Rev. & Tax Code § 18806; Cal.Unemp.Ins.Code § 13020(a).

66. Congress has provided that pensions paid under the Railroad Retirement Act are not taxable. 45 U.S.C. § 231m provides:
(a) notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever....
Veteran's benefits are similarly protected. 38 U.S.C. § 3101(a) provides:

Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable ... and such payments made to, or on account of, a beneficiary shall be exempt from taxation ... and shall not be liable to attachment, levy, or seizure ... by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.
Congress has also exercised its power to override state taxes in other contexts. See *Aloha Airlines, Inc. v. Director of Taxation of Hawaii,* 464 U.S. 7, 11–15, 104 S.Ct. 291, 293–95, 78 L.Ed.2d 10 (1983) (state airport tax preempted).

Congress carefully distinguished pension plans from welfare plans in several respects when it drafted ERISA. Importantly, the requirements for participation and vesting in a pension plan do not apply to welfare plans.[67] Among the requirements a pension plan must meet, Congress specified: "Each pension plan shall provide that benefits provided under the plan shall not be assigned or alienated." 29 U.S.C. § 1056(d)(1), § 206(d)(1) of the Act.

In *Mackey,* the Supreme Court recognized the importance of this distinction. The *Mackey* Court reasoned that since § 206(d)(1) of the Act "bars the alienation of pension plan *benefits,*" it "prohibits the use of state enforcement mechanisms ... in so far as they prevent those benefits from being paid to plan participants." 486 U.S. at 836, 108 S.Ct. at 2188–89 (emphasis in original). By contrast, under § 514(a), preemption extends only to welfare *plans. Id.* With this distinction, the Court concluded, "Congress demonstrated that it could, where it wished to, stay the operation of state law as it affects only benefits and not plans." *Id.*

The Supreme Court recently endorsed this reasoning as consistent with the legislative history, regulations, and the views of other courts. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund, Inc.,* —— U.S. ——, 110 S.Ct. 680, 685, 107 L.Ed.2d 782 (1990). The legislative history reveals that Congress specifically intended that state tax levies should be one of the forms of alienation against which pension funds were protected. The 1974 Conference Committee explained: [68]

> Under the conference substitute, a plan must provide that benefits under the plan may not be assigned or alienated. [T]here may be a voluntary revocable assignment (not to exceed 10 percent of any benefit payment) by an employee.... [But f]or purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment.

Treasury regulations reflect this principle.[69]

The Board argues that this court and others have allowed ERISA pension funds to be garnished for domestic relations orders. *See Operating Engineers' Local #428 Pension Trust Fund v. Zamborsky,* 650 F.2d 196, 198–99 (9th Cir.1981), and cases cited therein. This exception was codified by Congress in its 1984 amendments to ERISA.[70] *See Mackey,* 486 U.S. at 838, 108 S.Ct. at 2189–90. The Board suggests that this exception provides authority for its tax levy.

We disagree. Beyond this exception, courts have generally held garnishment of pension funds to be preempted by ERISA's anti-alienation provision.[71] *Guidry,* 110 S.Ct. at 685 n. 12; *Mackey,* 486 U.S. at 838–40, 108 S.Ct. at 2189–90 (domestic relations exception not precedent for other

**67.** The requirements for participation and vesting, codified at 29 U.S.C. §§ 1051–1061, apply to, *inter alia,* any plan "other than an employee welfare benefit plan." 29 U.S.C. § 1051(1), § 201 of the Act.

**68.** Joint Explanatory Statement of the Committee of Conference to Accompany H.R. 2, H.R. Conf. Rep. No. 93–1280, 93d Cong., 2d Sess., at 249, 280 (1974), *reprinted in* 3 ERISA Legislative History 4277, 4547; 1974 U.S.Code Cong. & Admin.News 4639, 5061.

**69.** 26 C.F.R. § 1.401(a)–(13)(b)(1) provides:
(1) *General Rule.*—[A] trust will not be qualified unless the plan ... provides that benefits ... may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process.
There is an exception for federal tax levies. *See* 26 C.F.R. § 1.401(a)–(13)(b)(2)(i).

**70.** Retirement Equity Act of 1984, Pub.L. 98–397, 98 Stat. 1426 (codified in pertinent part at 29 U.S.C. § 1056(d)(3)).

**71.** One state court has allowed garnishment of an ERISA pension fund for other purposes. *National Bank of North America v. International Bhd. of Elec. Workers Local #3,* 69 A.D.2d 679, 419 N.Y.S.2d 127, *appeal dismissed,* 48 N.Y.2d 752, 422 N.Y.S.2d 666, 397 N.E.2d 1333 (1979). New York courts have since denied garnishment under similar circumstances. *See Northwest Airlines, Inc. v. Roemer,* 603 F.Supp. 7, 11 n. 6 (D.Minn.1984) (discussing *IBEW #3* ). In any event, we are not bound by the New York state court's pre-*Mackey* decision.

Some courts have allowed garnishment of a trustee's own pension benefits in the case of misconduct or fraud. On this point, the circuits are split. *See Guidry,* 110 S.Ct. at 684 n. 9.

forms of garnishment); *Tenneco Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688, 690 (4th Cir.1983) (same). In particular, courts have held state tax levies preempted. *See General Motors v. Buha*, 623 F.2d 455, 461–62 (6th Cir.1980) (finding treasury regulations authoritative); *Northwest Airlines, Inc. v. Roemer*, 603 F.Supp. 7, 10 (D.Minn.1984).

We decline to read the limited exception for domestic relations orders as precedent for allowing other forms of attachment against funds in a pension trust. The Supreme Court has recently instructed that § 206(d) "reflects a considered Congressional policy choice," to which Congress should create any further exception. *Guidry*, 110 S.Ct. at 687. We conclude that the Board's tax levy procedure is prohibited under ERISA's anti-alienation provision.

The Board asserts that no attempt has been made to levy against pension funds and it has a policy against such a procedure. Nevertheless, the retirement trust sought declaratory relief against the Board and the district court's broad judgment upholding the tax levy statute included both trusts. We vacate the district court's judgment to the extent it would allow a tax levy to be filed against funds in the retirement trust.

### B

Finally, we must determine whether EDD's withholding procedure as applied to the retirement trust is prohibited.[72]

In *Mackey*, the Supreme Court instructed that ERISA prohibits enforcement mechanisms that prevent pension benefits from being paid to participants. 486 U.S. at 836, 108 S.Ct. at 2188–89. The trusts argue

that withholding falls within that prohibition. We disagree.

First, we note that, unlike a tax levy, California's withholding procedure is not an enforcement mechanism. It is an elective collection procedure. Second, while ERISA's anti-alienation provision reaches both voluntary and involuntary assignments, *see Buha*, 623 F.2d at 460, it allows the voluntary assignment of up to 10% of a recipient's pension benefits.[73] Congress specified only that levies should not be considered voluntary; it did not mention state tax withholding.[74] A recipient's election to withhold, to the extent it does not exceed 10% of a benefit payment, falls within this exception.

We need not rely on that provision alone, however, for we are not without guidance in determining what constitutes prohibited "assignment" or "alienation" under the statute. Treasury regulations define "assignment and alienation" to include any assignment of benefits, but with certain exceptions. State tax withholding is one of the exceptions.[75]

When Congress is silent, we must give controlling weight to an agency's construction of a statute which it administers. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). This is particularly true if Congress has expressly instructed the agency to implement the statute by regulation. We may disregard such legislative regulations only if they are "arbitrary, capricious or manifestly contrary to the statute." *Id.*

---

72. The parties agree that EDD's wage withholding program is intended to reach pension funds. EDD states that it believes the retirement trust has been complying. *See* Statement of Bill Corrie, *supra*, n. 16.

73. 29 U.S.C. § 1056(d)(2), § 206(d)(2) of the Act.

74. See *supra*, n. [V–2].

75. 26 C.F.R. § 1.401(a)–13(c)(1) defines "assignment and alienation" as:

(ii) any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.
Section 13(c)(2) provides:
(2) .... The terms "assignment" and "alienation" do not include ...
(ii) Any arrangement for the withholding of Federal, State or local tax from plan benefit payments.

Congress explicitly instructed the Treasury Department to adopt regulations implementing ERISA. *See Buha,* 623 F.2d at 461–62. The regulations it adopted track ERISA's statutory language and the committee's explanation of its intent. They are not contrary to other law.[76]

The regulations are also consistent with Congress' overall intent in establishing the ERISA scheme. One of Congress' primary goals in enacting ERISA was to ensure that participants would actually receive the retirement benefits to which they were entitled. *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980). It did not, however, create tax-free income but allowed the taxation of ERISA pension plan benefits to be deferred until received.[77] For federal tax purposes, Congress specified that periodic payments from a pension plan should be treated "as if the payment were wages," to which elective withholding applies.[78]

The regulations are also not "arbitrary." We note several distinctions between a tax levy and tax withholding that justify this rule. While a levy is a judicially enforceable remedy for an overdue debt, withholding is an elective procedure calculated to equal only the amount of taxes currently due.[79] Since it does not exceed the participant's current tax obligation, withholding "dissipates" the benefit only to the extent the underlying tax dissipates it. Withholding does not affect the amount of funds held in the trust. Courts of this circuit have categorically rejected the proposition that withholding is a form of levy. *See Life Science Church v. IRS,* 83–2 Stand. Fed.Tax Rep. (CCH) ¶ 9443, at 87,583, 87,-585, 1983 WL 1622 (N.D.Cal.1983) ("Since the only 'property' 'levied' is the withholding tax, there is no wrongful levy.")

In the absence of any expression of congressional intent to the contrary, we find the Treasury regulations' definition of "assignment or alienation" to be a permissible construction of the statute. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781. EDD's withholding procedure, in turn, is consistent with the federal regulations.[80] Under California law, a beneficiary may elect to have no tax withheld. The trustee is obligated to inform trust participants of this

76. The Supreme Court has long recognized that the states have power to withhold taxes, even from nonresidents. *See Travis v. Yale & Towne Mfg. Co.,* 252 U.S. 60, 75, 40 S.Ct. 228, 230, 64 L.Ed. 460 (1920). We have also recognized that state withholding procedures are constitutional. *See Stonecipher v. Bray,* 653 F.2d 398, 403 (9th Cir.1981) (considering state and federal withholding taxes), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). California courts have come to the same conclusion. *See Otworth v. So. Pac. Transportation Co.,* 166 Cal. App.3d 452, 455, 461, 212 Cal.Rptr. 743, 754, 748 (1985) (same).

77. Internal Revenue Code, 26 U.S.C. § 402(a), provides: "the amount actually distributed to any distributee by any employees' trust described in Section 401(a) ... shall be taxable to him in the year in which so distributed...."
   *See* H.R.Rep. No. 93–807, 93d Cong., 2d Sess., at 8–9 (1974), *reprinted in* 2 ERISA Legislative History 3115, 3128–29 ("In broad outline, the objective is ... to make sure to the greatest extent possible that those who do participate in such plans actually receive benefits"; "covered employees defer payment of tax on employer contributions made on their behalf until they actually receive the benefits, generally after retirement when their incomes and hence applicable tax rates tend to be lower.")

78. Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 334(a), 96 Stat. 623 (codified as amended at 26 U.S.C. § 3405(a)(1)), provides:
   (1) Withholding as if payment were wages.— The payor of any periodic payment ... shall withhold from such payment the amount which would be required to be withheld from such payment if such payment were a payment of wages by an employer to an employee for the appropriate payroll period.
   (2) Election of no withholding.—An individual may elect to have paragraph (1) not apply with respect to periodic payments made to such individual. Such an election shall remain in effect until revoked by such individual.

79. Cal. Unemp. Ins.Code § 13020 authorizes withholding of "a sum which is substantially equivalent to the amount of tax reasonably estimated to be due."

80. Cal. Unemp. Ins.Code § 13028(b) provides: "If an individual makes an election under ... the Internal Revenue Code not to have tax withheld, that election shall apply to withholding under this division...."

option.[81] We find nothing in EDD's procedure that is contrary to Congress' expressed intent.

We conclude that California's elective withholding procedures, unlike its tax levy procedures, do not constitute prohibited alienation and are not preempted by ERISA.

## CONCLUSION

The Supreme Court has recognized that the collection of taxes is the "life-blood of government." *USPS*, 467 U.S. at 523, 104 S.Ct. at 2555 (quoting *Bull*, 295 U.S. at 259–60, 55 S.Ct. at 699). We have carefully reviewed the statutes, regulations, and legislative history of ERISA. With the exception of the Board's tax levy procedure as applied to funds in the retirement trust, we conclude that the California tax collection procedures challenged here are consistent with congressional intent and are not preempted by ERISA.

First, we hold that neither of the challenged procedures "relates to" either ERISA trust. California's tax levy is indistinguishable from the judicial garnishment approved of in *Mackey* and may be applied to funds in the vacation trust. California's withholding procedures also do not "relate to" the vacation trust and are not preempted. Funds held in the vacation trust for the credit of the beneficiary taxpayer are not otherwise protected by ERISA's anti-alienation provision.

Funds in the retirement trust, however, are protected by ERISA's anti-alienation provision. California's state tax levy constitutes alienation and is prohibited. California's elective withholding procedure does not constitute alienation under the statute and is not prohibited by ERISA.

To the extent the district court's judgment would allow the Board to file tax levies against funds in the retirement trust, the judgment is vacated. The district court's order is otherwise affirmed.

AFFIRMED IN PART and VACATED IN PART.

---

81. Cal. Admin. Code tit. 22 § 4328–1(b)(2) provides: "The payer is required to provide each payee with notice of the right to elect not to have withholding apply...."